1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  CHERYL ADAMS, State Bar #164194
   Chief Trial Attorney
3  MARGARET W. BAUMGARTNER, State Bar #151762
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, Sixth Floor
5  San Francisco, California 94102-5408
   Telephone:    (415) 554-3859
6  Facsimile:    (415) 554-3837
   Email:        margaret.baumgartner@sfgov.org

Attorneys for Defendants CITY AND COUNTY OF SAN FRANCISCO,
NICK BETTENCOURT, ALBERTO DUARTE, DARCY KELLER, KEITH MATTHEWS,
JON MCMAHON, MARK MOPAS and PETER WALSH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT MCLAIN, an individual, and MYLAN TRANG, an individual,<br><br>　　Plaintiffs,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE OFFICER NICK BETTENCOURT; SAN FRANCISCO POLICE OFFICER ALBERTO DUARTE; SAN FRANCISCO POLICE OFFICER DARCY KELLER; SAN FRANCISCO POLICE OFFICER DANNY LOPEZ; SAN FRANCISCO POLICE OFFICER KEITH MATTHEWS; SAN FRANCISCO POLICE OFFICER JOHN MCMAHON; SAN FRANCISCO POLICE OFFICER MARK MOPAS; SAN FRANCISCO POLICE OFFICER PETER WALSH; and DOES 1 through 50, inclusive,<br><br>　　Defendants. | Case No. 12-CV-3225 MEJ<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME**<br><br>Hearing Date:　August 15, 2013<br>Time:　　　　10:00 a.m.<br>Place:　　　　Ctrm. B, 15th Fl.<br><br>Trial Date:　　Jan. 13, 2014 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii
INTRODUCTION ........................................................................................................................3
STATEMENT OF FACTS ...........................................................................................................3
ARGUMENT ................................................................................................................................6
    I.     STANDARD FOR SUMMARY JUDGMENT..........................................................6
    II.    THE OFFICERS DID NOT VIOLATE THE FOURTH AMENDMENT BY TOWING THE BOAT.................................................................................................7
          A.     The Officers had Probable Cause to tow the Boat Because it had no Visible Hull Identification Number. ............................................................7
          B.     The Officers had the Authority to Tow the Boat Because They had Probable Cause to Believe it Contained Stolen Property.............................8
    III.   THE OFFICERS DID NOT VIOLATE THE FOURTH AMENDMENT WHEN THEY DISMANTLED THE BOAT .........................................................8
    IV.   TOWING THE BOAT IS NOT A FEDERAL CONSTITUTIONAL TAKING....9
    V.    EVEN IF PLAINTIFF COULD PROVE A CONSTITUTIONAL VIOLATION, THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY .......................9
    VI.   PLAINTIFF CANNOT PROVE A MONELL CLAIM .........................................11
    VII.  PLAINTIFF'S STATE LAW CLAIMS FAIL ......................................................12
          A.     There is no Private Right of Action Under the California Constitution ....12
          B.     Defendants are Immune Under California Gov't Code Section 821.6 and Section 815.2 for the State Tort Claims...................................................12
    VIII. PLAINTIFF MYLAN TRANG LACKS STANDING TO SUE FOR ANY CLAIMS BASED ON LOSS OF PROPERTY AS SHE DID NOT HAVE ANY OWNERSHIP INTEREST IN THE BOAT ...........................................................13
CONCLUSION...........................................................................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**

*Acadia Tech., Inc. v. United States*
    458 F.3d 1327 (Fed. Cir. 2006) ............................................................................................. 9

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ............................................................................................................. 6

*Andrews v. City of Philadelphia*
    895 F.2d 1469 (3d Cir. 1990) ............................................................................................. 12

*Ashcroft v. al-Kidd*
    131 S.Ct. 2074 (2011) .......................................................................................................... 9

*Bettin v. Maricopa Co.*
    2007 WL 1713319 (D.Ariz. Jun. 12, 2007) .......................................................................... 8

*Bhan v. NME Hosps., Inc.*
    929 F.2d 1404 (9th Cir. 1991) .............................................................................................. 6

*Board of County Comm'rs of Bryan County v. Brown*
    520 U.S. 397 (1997) ........................................................................................................... 11

*Brosseau v. Haugen*
    543 U.S. 194 (2004) ........................................................................................................... 10

*Butz v. Economou*
    438 U.S. 478 (1978) ........................................................................................................... 10

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ............................................................................................................. 6

*City of Canton v. Harris*
    489 U.S. 378 (1989) ........................................................................................................... 12

*City of Los Angeles v. Heller*
    475 U.S. 796 (1986) ........................................................................................................... 11

*City of St. Louis v. Praprotnik*
    485 U.S. 112 (1988) ........................................................................................................... 11

*Deligiannis v. City of Anaheim*
    2010 WL 1444538 (C.D. Cal. Mar. 2, 2010) ....................................................................... 9

*Fairley v. Luman*
    281 F.3d 913 (9th Cir. 2002) ............................................................................................. 11

*Franklin v. Fox*
    312 F.3d 423 (9th Cir. 2002) ............................................................................................. 10

*G & G Jewelry, Inc. v. City of Oakland*
989 F.2d 1093 (9th Cir. 1993) ...............................................................................................8

*Gunn v. Kalamazoo KVET*
2011 WL 529694 (W.D. Mich. 2011) ...................................................................................13

*Hammond v. County of Madera*
859 F.2d 797 (9th Cir.1988) .................................................................................................11

*Haynie v. County of Los Angeles*
339 F.3d 1071 (9th Cir. 2003) ..............................................................................................10

*Hudson v. Palmer*
468 U.S. 517 (1984)................................................................................................................9

*Jackson v. Silicon Valley Animal Care Authority*
2008 WL 5130746 (N.D. Cal. Dec. 5, 2008).........................................................................12

*Jett v. Dallas Indep. Sch. Dist.*
491 U.S. 701 (1989)..............................................................................................................11

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)..............................................................................................................13

*McDade v. West*
223 F.3d 1135 (9th Cir. 2000) ..............................................................................................12

*McKinley v. City of Eloy*
705 F.2d 1110 (9th Cir.1983) ...............................................................................................11

*Monell v. Dept. of Social Serv. of New York*
436 U.S. 658 (1987).......................................................................................................11, 12

*Nissan Fire & Marine Ins. Co. v. Fritz Co.*
210 F.3d 1099 (9th Cir. 2000) ................................................................................................6

*Pearson v. Callahan*
555 U.S. 223 (2009)..........................................................................................................9, 10

*Pembaur v. City of Cincinnati*
475 U.S. 469 (1986)..............................................................................................................11

*Ramirez v. City of Buena Park*
560 F.3d 1012 (9th Cir. 2009) ..............................................................................................10

*Saucier v. Katz*
533 U.S. 194 (2001)..............................................................................................................10

*Sorrels v. McKee*
290 F.3d 965 (9th Cir. 2002) ................................................................................................10

*South Dakota v. Opperman*
  428 U.S. 364 (1976) ............................................................................................................8

*Texas v. Brown*
  460 U.S. 730 (1983) ......................................................................................................8, 10

*Thompson v. City of Los Angeles*
  885 F.2d 1439 (9th Cir. 1989) ............................................................................................12

*U.S. v. 4,432 Mastercases of Cigarettes, More Or Less*
  448 F.3d 1168 (9th Cir. 1998) ..............................................................................................8

*Wise v. Nordell*
  2012 WL 3959263 (S.D. Cal. Sept. 10, 2012) .....................................................................9

**Federal Statutes**
42 U.S.C. § 1983 ................................................................................................................11, 12

**State Cases**
*Amylou R. v. County of Riverside*
  28 Cal.App.4th 1205 (1994) ...............................................................................................13

*Baughman v. State of California*
  38 Cal.App.4th 182 (1995) .................................................................................................13

*Church of Scientology v. Armstrong*
  232 Cal.App.3d 1060 (1991) ..............................................................................................13

*Halajian v. D & B Towing*
  209 Cal.App.4th 1 (2012) .....................................................................................................7

*Steele v. Marsicano*
  102 Cal. 666 (1894) ............................................................................................................13

**State Statutes & Codes**
California Government Code §815.2 ...........................................................................2, 12, 13

California Government Code §821.6 ..................................................................................2, 12

California Vehicle Code §9845 .........................................................................................7, 10

California Vehicle Code Section §9872 .....................................................................................7

California Vehicle Section §9872.1 ..................................................................................7, 10

**Rules**
Federal Rule of Civil Procedure 56 ............................................................................................6

**Constitutional Provisions**
California Constitution Article 1 Section 13 .............................................................................12

# NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that Defendants City and County of San Francisco, Nick Bettencourt, Alberto Duarte, Jon McMahon, Darcy Keller, Keith Matthews, Mark Mopas and Peter Walsh will and hereby do move for summary judgment on all of Plaintiff's claims. Per Court Order, the hearing shall take place on August 15, 2013 at 10:00 a.m. in the courtroom of the Honorable Maria-Elena James, at Courtroom B, 15th Floor of 450 Golden Gate Ave., San Francisco, California.

The bases of Defendants' motion are as follows:

1. Defendants move for judgment on all of Plaintiff Mylan Trang's claims as she was not the owner of the property allegedly wrongfully seized, and therefore has no standing.

2. Defendants move for judgment on Plaintiff's First Cause of Action under the Fourth Amendment based on the alleged unlawful towing of a boat on four grounds:

    a. The boat lacked a visible Hull Identification Number and therefore as a matter of law the officers had the lawful authority to tow the boat;

    b. That the officers had probable cause to believe that the boat contained stolen property;

    c. Plaintiff has no basis for claiming that the towing occurred as the result of an unconstitutional municipal policy;

    d. That in any case the individual defendants would be entitled to qualified immunity as it was not clearly unconstitutional to tow the boat under the circumstances.

3. Defendants move for judgment on Plaintiff's Second Cause under the Fourth Amendment for returning the boat in a dismantled condition on three grounds:

    a. The manner in which the officers conducted their investigation, including the dismantling of the boat, is not a violation of the Fourth Amendment as a matter of law.

    b. Plaintiff has no basis for claiming that the dismantling occurred as the result of an unconstitutional municipal policy, and

    c. The individual defendants have qualified immunity as it would not be clearly unconstitutional to dismantle the boat as part of the investigation.

1    4. Defendants move for judgment on Plaintiff's Third Cause of Action under the Fifth Amendment on the grounds that towing a vessel as an exercise of the police power is not a constitutional taking as a matter of law.

5. Defendants move for judgment on Plaintiff's Fourth and Fifth Causes of Action under Article 1 Section 13 of the California Constitution on four grounds:

    a. No private right of action exists under this provision of the California Constitution;

    b. Defendants had probable cause to tow the boat;

    c. Defendants' had the lawful authority to dismantle the boat while lawfully in its custody as part of its investigation; and

    d. Defendants are immune under California Government Code §§ 821.6 and 815.2.

6. Defendants move for judgment on Plaintiff's Sixth Cause of Action for under Article 1 Section 19 of the California Constitution on the grounds that

    a. Plaintiffs lack a private right of action under this provision;

    b. This tow is not a taking as a matter of law; and

    c. Defendants are immune under California Government Code §§ 821.6 and 815.2.

7. Defendants move for judgment on Plaintiff's Seventh Cause of Action for trespass to real property, Eighth Cause of Action for conversion, and Ninth Cause of Action for negligence on the grounds that Defendants are immune under California Government Code §§ 821.6 and 815.2.

Dated: July 18, 2013

    DENNIS J. HERRERA
    City Attorney
    CHERYL ADAMS
    Chief Trial Attorney
    MARGARET W. BAUMGARTNER
    Deputy City Attorney

By: */s/ Margaret W. Baumgartner*
    MARGARET W. BAUMGARTNER

    Attorneys for Defendants
    CITY AND COUNTY OF SAN FRANCISCO, ET AL.

# INTRODUCTION

The San Francisco Police Department towed a boat from a public harbor that lacked a visible Hull Identification Number ("HIN"), and that the officers reasonably believed had attached to it equipment stolen from the San Francisco Police Department's Marine Unit. Plaintiff Brent McLain, a City employee who had access to the Police Department Marine Unit's storage spaces, and who had a business relationship with, and knew, members of the Marine Unit, claimed that he had purchased the boat and equipment from an unknown person in a parking lot. The Department's investigators knew that the boat, the engines, and other equipment had at one time belonged to the SFPD, and could not locate any records or other information that would explain how the boat, equipped with same property it had on it when it belonged to the SFPD, came lawfully into Plaintiff's possession.

After the Department towed the boat, the investigating officers caused parts of the boat to be dismantled to find the HIN and otherwise investigate whether the boat and its equipment had been transferred, lawfully or unlawfully, from the SFPD to Plaintiff McLain.

Plaintiff McLain then filed a motion for return of property. After a number of hearings, the Court ordered the SFPD to return the boat, and the equipment, to Plaintiffs. The Department complied with the order.

Plaintiff now sues the City and various individual police officers based on various federal and state constitutional provisions, as well as state tort statutes, for towing and dismantling the boat. Based on the undisputed facts, all of those claims fail.

# STATEMENT OF FACTS

In late 2010, a police officer reported what he believed to be financial misconduct by the Officer in Charge of the San Francisco Marine Unit ("OIC"). (McMahon Depo. 18:23-19:3.) The Department's Internal Affairs Criminal Division began a criminal investigation into the matter. Soon after the investigation started, Sgt. Jon McMahon took over the investigation. Sgt. Peter Walsh assisted.

During the investigation into financial mismanagement by the OIC, another officer informed McMahon and Walsh that Plaintiff Brent McLain had in his possession a 21 ft. Zodiac boat that belonged to the SFPD. (McMahon Depo. 22:2-13.) McLain worked at the Port, had access to the

Marine Unit's storage building, and had business connections with the OIC and other members of the unit. (McLain Depo. 11:9-17; 63:2-10; 66:10-67:16; 76:24-7:15; McMahon Depo. Ex. 1 pg. 5, 9.) The equipment attached to the boat, including the engines and radar, appeared to be the same equipment as attached when the SFPD Marine Unit possessed the boat. (McMahon Depo. 29:22-30:24; 65:11-66:2; Ex. 1 pg. 10 (Marine Unit officer "thought it strange how the way the Zodiac boat was outfitted"); Duarte Depo. 20:11-19.)

In late December, 2010, McMahon and Walsh had a number of conversations with McLain about the boat and how it came into his possession. (McLain Depo. 84:6-11; McMahon Depo. Ex. 1 pg. 10-13.) McLain claimed that he found the boat through an ad on Craigslist. (McLain Depo. 34:1-9.) He then met the unknown seller in a parking lot, and purchased the fully-equipped boat for $5,000. (McLain Depo. 101:2-10.) (The DMV records, on the other hand, showed that McLain listed the purchase price of the boat as $500. McLain claimed this was a "clerical mistake" although he cannot recall if he told the investigators that he put the wrong number on the form to save on taxes. (McLain Depo. 101:2-19, 102; McMahon Depo. Ex. 1 pg. 13.))

The investigation resulted in many dead ends. McMahon and Walsh located records regarding how the SFPD acquired the boat from the Coast Guard, but could not initially locate any documents indicating how the boat left the City's possession. (McMahon Depo. Ex. 1 pg. 11, 13.) They sought information from both Craigslist and the seller of the boat, but the staff at Craigslist could not locate any ads for the boat. (McMahon Depo. Ex. 1 pg. 11, 13.) The person who the DMV records indicated sold the boat to McLain refused to speak to them. (McMahon Depo. pg. 12-13; McMahon Dec. ¶ 6.)[1]

The investigators also sought, but could not locate, the boat itself. Investigators searched for the boat at Pier 50, where Plaintiff worked at the City's Port facility, which was the location that the DMV records showed the boat registered, another Pier, and at a residence owned by Plaintiff McLain in Napa County, to no avail. (McMahon Depo. 56:11-20; Duarte Depo. 16:12-14; 17:18-18:3; 18:11-24.) McLain did not generally keep the boat in the water. (Duarte Depo. 25:11-18.)

---

[1] The only name on the registration papers was McLain. Plaintiff Trang's name does not appear on the papers. (McMahon Dec. ¶ 9.)

1    In January, 2011, McMahon and Walsh finally found a record that showed that the SFPD had
2    sold the bare hull of a 21 ft. Zodiac Boat, with a HIN one number off from Plaintiff's, for $1 at auction
3    a number of years before. (McMahon Depo. 46:6-24.) The records indicated that the SFPD did not
4    sell the engines, the sponsons (the blow up portions that cover the sides of the boat) or other
5    equipment with the bare hull. (McMahon Depo. 46:6-24.) Yet, according to the investigator's
6    information, the boat remained equipped with the same equipment as it had when it belonged to the
7    SFPD. All of the records indicated that equipment continued to belong to the SFPD. (McMahon
8    Depo. 29:22-30:24, 50:14-51:8; 54:2-10.)

9    On January 11, 2011, McMahon, Walsh, Duarte, and other members of the IA Criminal Unit
10   made a concerted effort to locate the boat. After hours of searching the waterfront, they located the
11   boat at the Hyde Street pier, docked next to the SFPD Marine Unit facility. (Duarte Depo. 24:9-
12   25:10.) After members of the Marine Unit let them onto the pier, the investigators attempted to locate
13   a HIN on the boat. They also determined that the engines were in fact those that appeared to continue
14   to belong to the SFPD. (McMahon Depo. 50:14-51:8; Duarte Depo. 30:4-12; 33:10-34:19.)
15   Moreover, the sponsons had the SFPD decals clearly visible through the paint, and the console
16   appeared to be the same one that belonged to the SFPD. (McMahon Depo. 52:17-53:5; Duarte Depo.
17   36:10-37:9.)

18   The investigators learned that the boat docked next to the Zodiac belonged to McLain. An
19   officer knocked on the door of the boat, without response. (Durate Depo. 28:20-29:9.) The
20   investigators then sought assistance from the other members of the SFPD Marine Unit to tow the boat
21   to the City's lockup. (Durate Depo. 38:6-15; McMahon Depo. 58:15-20.) The Marine Unit indicated
22   that they could not tow the boat until the following morning due to the tides. (McMahon Depo. 58:15-
23   20.) Concerned that McLain may move the boat before it could be towed, and that they would no
24   longer be able to locate it, the investigators remained with the boat until the following morning, when
25   it was towed. (McMahon Dec. ¶ 9; McMahon Depo. 58:25-59:1; Duarte Depo. 38:1-5; 40:13-14.)

26   While in the possession of the SFPD, the investigators still could not locate a HIN on the boat.
27   They sought expert assistance. Finally, they dismantled the boat and located the HIN. (McMahon
28   Depo. 75:2-8.) The HIN did not match either the HIN from the SFPD, the HIN from the Coast Guard

boat given to the SFPD, or the HIN on McLain's paperwork, although they were all one number off from each other. (McMahon Depo. 75:9-11.)

After McLain filed various motions in the Superior Court, the Court in August 2011 ordered all of the property seized returned to McLain. The SFPD complied with that order. (McMahon Dec. ¶12.)

## ARGUMENT

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. Proc. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts that would preclude the entry of summary judgment are those which, under the applicable substantive law, may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there is no material factual dispute. *Celotex*, 477 U.S. at 324. However, where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that there is no material factual dispute by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. Summary judgment must be granted if defendant "show[s] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. *Id.* If the moving party shows an absence of evidence to support the non-moving party's claim, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). A failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

## II. THE OFFICERS DID NOT VIOLATE THE FOURTH AMENDMENT BY TOWING THE BOAT

### A. The Officers had Probable Cause to tow The Boat Because It had no Visible Hull Identification Number.

An officer does not violate the Fourth Amendment when towing a vehicle that cannot be lawfully operated. *Halajian v. D & B Towing*, 209 Cal.App.4th 1, 16 (2012) (towing unregistered car from private parking lot did not violate Fourth Amendment, or California Const. Art. 1 Sec. 13). Here, the officers exercised their authority under California Vehicle Code § 9845 to inspect the vessel for a HIN.[2] They could not locate a HIN in any of the places that it was supposed to be. California Vehicle Section 9872.1 allows an officer to impoundment a vessel without a valid HIN.[3] The officers therefore had the authority to tow the boat.

The Department located the HIN only after dismantling the boat. The HIN was defaced and/or altered. (McMahon Dec. ¶ 9.) Moreover, the HIN did not match the HIN on Plaintiff's registration, as it was one number off. (McMahon Dec. ¶ 9.)

Because California Vehicle Code Section 9872.1 provided authority to tow the boat, the officers did not violate Plaintiff's constitutional rights. The Court should grant summary judgment on this claim.

---

[2] Cal. Vehicle Code § 9845 provides: The director, deputy director, registrar, deputy registrar, investigators of the department, and peace officers, as defined in Chapter 4.5 (commencing with Section 830) of the Penal Code, may inspect the hull identification number, certificate of number, and certificate of ownership of any vessel, as defined in Section 9840, when transported on a highway, or in any public garage, repair shop, public or private marina, dry storage facility, new or used vessel sales lot or boat yard, or other similar establishment for the purpose of investigating the ownership and registration of vessels, locating stolen vessels, and for inspection of wrecked, dismantled, or abandoned vessels. The authority to inspect pursuant to this section does not extend to any enclosed living area aboard a vessel.

[3] Cal. Vehicle Code § 9872.1 provides in pertinent part: 9872.1. (a) No person shall knowingly buy, sell, offer for sale, receive, or have in his or her possession any vessel, or component part thereof, from which the hull identification number has been removed, defaced, altered, or destroyed, unless the vessel or component part has attached thereto a hull identification number assigned or approved by the department in lieu of the manufacturer's number. (b) Whenever a vessel, or component part thereof, from which the hull identification number has been removed, defaced, altered, or destroyed, and which does not have attached thereto an assigned or approved number as described in subdivision (a), comes into the custody of a peace officer, the seized vessel or component part is subject, in accordance with the procedures specified in this section, to impoundment and to such disposition as may be provided by order of a court having jurisdiction. This subdivision does not apply with respect to a seized vessel or component part used as evidence in any criminal action or proceeding.

### B. The Officers had the Authority to Tow the Boat Because They had Probable Cause to Believe it Contained Stolen Property.

An officer may lawfully seize property that is in plain view without a warrant when the officer has probable cause to believe it is stolen. See *Texas v. Brown*, 460 U.S. 730, 739 (1983); *G & G Jewelry, Inc. v. City of Oakland*, 989 F.2d 1093, 1100 (9th Cir. 1993); *South Dakota v. Opperman*, 428 U.S. 364, 367-68 (1976) ("the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible.) "Probable cause to seize property does not require absolute certainty, but only a 'fair probability' that the property" may be stolen. See *U.S. v. 4,432 Mastercases of Cigarettes, More Or Less*, 448 F.3d 1168 (9th Cir. 1998).

Here, the officers working on the investigation lawfully gained access to the Pier where the boat was moored in a public slip. (McMahon Dec. ¶ 6.) The officers had conducted an extensive investigation into possible financial misconduct at it related to Marine Unit property, and had information that even if the hull of the boat had lawfully been sold that the equipment on the boat, including the engines, had never been formally transferred out of the possession of the SFPD. (McMahon Dec. ¶4.) McLain's explanation that he bought the boat fully equipped from an unknown person off of Craigslist could not be confirmed, as Craigslist could not find any such listing, and the alleged seller would not speak to the officers. (McMahon Dec. ¶4.) And, they knew that McLain, a City employee, had access to and business ties to the Marine Unit and its employees. (McMahon Dec. ¶ 3 ) In sum, although the Officers sought a rational explanation as to how the boat, with the same equipment that had been attached to it when it was in the possession of the SFPD, came to be in Plaintiff's possession, they could not find one.

Because the officers had probable cause to believe that at a minimum the equipment on the boat had been stolen, the Court should grant summary judgment on Plaintiff's Fourth Amendment claim as to all Defendants.

### III. THE OFFICERS DID NOT VIOLATE THE FOURTH AMENDMENT WHEN THEY DISMANTLED THE BOAT

The Fourth Amendment does not prohibit a refusal to return property in a Police Department's possession. *Bettin v. Maricopa Co.*, 2007 WL 1713319 (D.Ariz. Jun. 12, 2007); *Wise v. Nordell*, 2012

WL 3959263 (S.D. Cal. Sept. 10, 2012). And, if the state provides for post-seizures remedies, a Plaintiff may not state a Fourteenth Amendment claim. See *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Thus, to the extent that Plaintiff intends to state a claim for dismantling the property, it is not a "search or seizure" in violation of the Fourth Amendment.

Plaintiff not only had, but exercised, his post-deprivation procedural rights for return of property. Thus, he cannot state a claim for the act of keeping the property after the seizure until the superior court ordered it returned.

The Court should grant summary judgment to all Defendants on Plaintiff's Second Cause of Action.

## IV. TOWING THE BOAT IS NOT A FEDERAL CONSTITUTIONAL TAKING

When the government seizes property in the exercise of its police powers, the Takings Clause does not apply. *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1330 (Fed. Cir. 2006). This is true even if the plaintiff alleges that the exercise of police power was illegitimate or unlawful. *Id.* ("a taking does not result simply because the government acted unlawfully"). Towing cars is an exercise of the police powers, and not a taking for public purposes within the meaning of the Takings Clause. *Deligiannis v. City of Anaheim*, 2010 WL 1444538 (C.D. Cal. Mar. 2, 2010) report and recommendation adopted, 2010 WL 1444535 (C.D. Cal. Apr. 3, 2010), aff'd, 471 F.App'x 603 (9th Cir. 2012).

Because the towing of Plaintiff's Boat was not a constitutional taking, the Court should grant all Defendants summary judgment on this claim.

## V. EVEN IF PLAINTIFF COULD PROVE A CONSTITUTIONAL VIOLATION, THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

Each of the Individual Officers is entitled to qualified immunity because the towing of the boat did not violated clearly established law. An officer is entitled to qualified immunity unless "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2081 (2011); see also *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The purpose of qualified immunity is to ensure that Officers, before they are held liable for constitutional violations, have "fair notice that [their] conduct was unlawful." See *Brosseau v. Haugen*, 543 U.S. 194, 198

(2004). Even when an officer makes a reasonable mistake about either the state of the law or the facts, a Court should grant qualified immunity. *Butz v. Economou*, 438 U.S. 478, 507 (1978); *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1077-78 (9th Cir. 2003) (citing *Saucier v. Katz,* 533 U.S. 194, 200 (2001)).

Plaintiff carries the burden to prove that clearly established federal law barred the officers' conduct. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Ninth Circuit courts traditionally evaluate a defendant's qualified immunity defense using a two-step inquiry based on *Saucier*. See *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009). Although *Saucier's* two-step inquiry is no longer "an inflexible requirement," generally, under the first step of *Saucier*, the issue is whether on the undisputed facts, the officers violated a constitutional right. *Pearson*, 555 U.S. at 231. Defendants have addressed this prong above, showing that they had probable cause as a matter of law.

Under the second step of *Saucier*, the issue is whether that right was "clearly established" in the specific factual context confronting the Officers. *Saucier*, 533 U.S. at 202. Thus, even if any of the Officers violated federal law, the Court must consider whether the law was clearly established as it applied to their situation. "If an official could reasonably have believed her actions were legal in light of clearly established law and the information she possessed at the time, she is protected by qualified immunity." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002) (citing *Saucier*).

Here, the California Vehicle Code gave the officers the statutory authority to inspect a vessel for a HIN, and to impound a vessel that lacked the HIN. Cal. Vehicle Code §§ 9845, 9872.1. Even if California law did not provide such authority, the officers had numerous facts that led them to believe that the boat, or at least the equipment on the boat, was stolen property, not lawfully in the possession of Plaintiff. And, officers have the right to seize such property. *Texas v. Brown*, 460 U.S. 730, 739 (1983). Thus, Plaintiff cannot present facts or law to preclude the application of qualified immunity to the officers. The Court should grant summary judgment as to all of the officers.

Additionally, as to Defendants Bettencourt, Mopas, and Matthews, Plaintiff has no evidence that these officers took any action that violated Plaintiff's rights. These officers simply towed the boat

1  upon orders to do so. Thus, even if the Court denies the motion as to the other individual Defendants,
2  the Court should grant the motion as to these Defendants.

## VI. PLAINTIFF CANNOT PROVE A MONELL CLAIM

The City may be subject to liability under 42 U.S.C. § 1983 only where an official policy or custom causes a constitutional tort. *Monell v. Dept. of Social Serv. of New York*, 436 U.S. 658, 690 (1987). If a plaintiff cannot prove that a municipal employee committed a constitutional violation then there can be no municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) ("Exoneration of [the officer] of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of force.") As noted above, Plaintiffs cannot prove that the officers towed his boat in violation of his constitutional rights.

Assuming, arguendo, that Plaintiffs could prove the officers' acts violated the constitution, they cannot prove a violation under *Monell*. A section 1983 plaintiff may establish municipal liability in one of three ways. First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation omitted); accord *Monell*, 436 U.S. at 690-91. A plaintiff also may establish that the individual who actually committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *McKinley v. City of Eloy*, 705 F.2d 1110, 1116 (9th Cir.1983); see also *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1988) (plurality opinion). Lastly, a plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action. See *Praprotnik*, 485 U.S. at 127; *Hammond v. County of Madera*, 859 F.2d 797, 801-02 (9th Cir.1988).

A Plaintiff cannot prove a *Monell* claim simply by identifying employee conduct that is attributable to the municipality. The plaintiff must prove that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Individual incidents of unconstitutional behavior by an

employee are insufficient to establish *Monell* liability. *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). "Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom. Only if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from custom." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989); accord *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law.") "Instead, it is when [the] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that [make] the government as an entity responsible under § 1983." *Monell,* 436 U.S. at 694.

There also must be a close causal connection between the alleged constitutional deficient policy and the resulting injury. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiffs cannot prove any act by a policy maker that would suggest that the City has a policy of unlawfully seizing vessels. Therefore, the Court should grant the City summary judgment on this claim.

**VII. PLAINTIFF'S STATE LAW CLAIMS FAIL**

**A. There is No Private Right Of Action Under The California Constitution**

Plaintiff asserts claims directly under the provisions of the California Constitution. No private right of action lies for these claims. See e.g., *Jackson v. Silicon Valley Animal Care Authority*, 2008 WL 5130746 (N.D. Cal. Dec. 5, 2008) (no private right of action under California Const. Art 1 Sec. 13). In addition, for the reasons stated above, the officers did not violate any of Plaintiff's constitutional rights. The Court should therefore grant Defendants summary judgment on all of Plaintiff's constitutional claims.

**B. Defendants are Immune Under California Gov't Code Section 821.6 and Section 815.2 for the State Tort Claims**

California Government Code Section 821.6 provides that a public employee is not liable for "injury caused by his instituting or prosecuting any judicial or administrative proceeding within the

scope of his employment, even if he acts maliciously and without probable cause." "Because investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.'" *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1209 (1994). California Government Code § 815.2 extends that immunity to the City.

Here, the officers towed and dismantled the boat in furtherance of their investigation as it related to both into the OIC of the Marine Unit, and to Plaintiff McLain. Thus, they are immune for those acts. See *Baughman v. State of California*, 38 Cal.App.4th 182 (1995).

Moreover, privilege is an appropriate defense to a conversion claim. *Church of Scientology v. Armstrong*, 232 Cal.App.3d 1060, 1071 (1991). Acts in fulfillment of a legal duty are privileged and do not constitute a conversion. *E.g.*, *Steele v. Marsicano*, 102 Cal. 666, 669 (1894) (bailee who returns goods to bailor has performed his legal duty and therefore cannot be sued for conversion, even if bailor had no right to goods).

**VIII. PLAINTIFF MYLAN TRANG LACKS STANDING TO SUE FOR ANY CLAIMS BASED ON LOSS OF PROPERTY AS SHE DID NOT HAVE ANY OWNERSHIP INTEREST IN THE BOAT**

To make a claim related to property, the plaintiff must have some ownership right in the property. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Gunn v. Kalamazoo KVET*, 2011 WL 529694 (W.D. Mich. 2011) (husband could not sue for wrongful seizure of property that belonged to his wife). Here, the only name on the title of the boat was McLain (McMahon Dec. ¶ 9.). Ms. Trang cannot even claim a community property interest, as she and McLain got married only on the day of the seizure. Therefore, she is not a proper Plaintiff here and the Court should grant summary judgment as to all of her claims.

//
//
//
//
//
//

# CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to all Defendants on all claims.

Dated: July 18, 2013

> DENNIS J. HERRERA
> City Attorney
> CHERYL ADAMS
> Chief Trial Attorney
> MARGARET W. BAUMGARTNER
> Deputy City Attorney
>
> By: */s/ Margaret W. Baumgartner*
>   MARGARET W. BAUMGARTNER
>
> Attorneys for Defendants
> CITY AND COUNTY OF SAN FRANCISCO, ET AL.