**EXHIBIT A**

Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 2 of 21

SERGEANT JON MCMAHON                                    June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                        1

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3

 4    BRENT MCLAIN, an individual,
      and MYLAN TRANG, an
 5    individual,

 6                 Plaintiffs,

 7         vs.                    CASE NO. 12-CV-3225 MEJ

 8    CITY AND COUNTY OF SAN
      FRANCISCO, et al.,
 9
                   Defendants.
10
      ------------------------------
11

12

13              DEPOSITION OF

14           SERGEANT JON McMAHON

15

16              June 26, 2013

17               9:31 a.m.

18

19           44 Montgomery Street

20               Suite 1100

21          San Francisco, California

22

23

24       Kathy Nelson, CSR No. 9796

25
```



1       A.    Yes.

2       Q.    And can you give me a general description of

3   what your testimony was?

4             MS. BAUMGARTNER:   I object that that's

5   overbroad.

6             You can answer to the best of your ability.

7             THE WITNESS:   Yeah.   We -- excuse me.   We just

8   talked to the commissioner regarding the seizure of the

9   boat, why we seized the boat, what -- what we seized

10  exactly.

11  BY MS. RENICK:

12      Q.    And when you say "we," who else is "we"?

13      A.    Just -- I mean the police department in

14  general.   I mean --

15      Q.    Can you tell me who at the police department

16  was also testifying?

17      A.    Who also testified?   I don't think anyone

18  testified, but I wouldn't know.

19      Q.    Okay.   Can you tell me what your current

20  position is with the San Francisco Police Department?

21      A.    I'm a sergeant.

22      Q.    And how long have you been a sergeant?

23      A.    Almost four years.

24      Q.    Are you assigned to a particular unit within

25  the police department?



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 4 of 21

SERGEANT JON MCMAHON                                      June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                        12

1        Q.    Do you recall if you went to this course every

2    day for a week or --

3        A.    It was every day.  Like I said, I don't

4    remember if it was -- I really don't remember if it was

5    two days, three days, four days.  For some reason, four

6    days sticks in my head.  I couldn't tell you for sure.

7        Q.    And have you had training with respect to

8    obtaining search warrants?

9        A.    Obtaining search warrants?  Can you ask the

10   question again?

11       Q.    Have you had any training with regard to

12   preparing search warrants?

13       A.    Yes.

14       Q.    When did you receive that training?

15       A.    Once again, I don't remember when it was.  I

16   would just be speculating.  Again, I'd say five, six,

17   seven, eight years ago.

18       Q.    Have you had any training with respect to what

19   constitutes probable cause?

20            MS. BAUMGARTNER:  Objection.  Vague.

21            You mean to arrest or seize?  There's

22   differences.

23   BY MS. RENICK:

24       Q.    What is your understanding of the requirements

25   that are necessary in order to obtain a search warrant?



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 5 of 21

SERGEANT JON MCMAHON                                              June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                              13

1        A.    You have to have probable cause to believe

2   that the person --

3        Q.    What is your understanding of what "probable

4   cause" means?

5        A.    Just that I feel that this person could have

6   committed this crime.

7        Q.    What is your understanding of either any other

8   requirements -- okay.  Let me back up.

9              Have you ever submitted an affidavit in

10  support of obtaining a search warrant?

11       A.    Yes.

12       Q.    How many times?

13       A.    I believe one or two times.

14       Q.    Did you prepare affidavits in support of

15  submitting -- or obtaining a search warrant with respect

16  to -- strike that.  I'll come back to that.

17             What is your understanding of when a police

18  officer must obtain a search warrant?

19       A.    We have probable cause to believe that the

20  incident occurred and, you know, this could be evidence

21  in a crime.

22       Q.    Are there -- other than the probable cause

23  requirement, are there any other requirements that you

24  must include within an affidavit that you're submitting

25  in support of obtaining a search warrant?



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 6 of 21

SERGEANT JON MCMAHON                                    June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                      18

1          MS. BAUMGARTNER:   -- unless she specifically

2     asks you to write on it.

3          THE WITNESS:   Okay.

4     BY MS. RENICK:

5          Q.   You said this investigation involved

6     misappropriation of city funds.   By who?

7          A.   By Lopez, Sergeant Lopez.

8          Q.   And who is Sergeant Lopez?   What unit was he

9     with?

10         A.   He's with the San Francisco Police Department

11    Marine Unit.

12         Q.   And at some point during this investigation,

13    you also were investigating a boat that belonged to my

14    client, Mr. McLain; correct?

15         A.   Yes.

16         Q.   Do you recall what information you received --

17    or the San Francisco Police Department initially

18    received that caused it to initiate this investigation?

19         A.   Which investigation?

20         Q.   This whole investigation that we're talking

21    about that is in this report, case number 100664178.

22         A.   Misappropriation of city funds.

23         Q.   What did you -- what was the information that

24    you received about a possible misappropriation of city

25    funds that initiated this investigation?



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 7 of 21

SERGEANT JON MCMAHON                                June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                      19

1      A.    Well, an officer found a couple of faxes that

2    they thought some funds had been misappropriated and he

3    pointed it out to us.  He had been with the Marine Unit.

4      Q.    Okay.  If you'll look at this first page, and

5    the entry is dated November 9th, 2010, and it says

6    "Summary of the case."  Do you see that?

7      A.    Uh-huh.

8      Q.    Okay.

9          MS. BAUMGARTNER:  For the record, that's a

10   yes?

11         THE WITNESS:  Yes.  Excuse me.  Sorry.

12   BY MS. RENICK:

13     Q.    And it says, "Officer Latus stated he

14   witnessed possible improper action taken by Sergeant

15   Lopez while purchasing Department equipment," and then

16   it references some boat -- two boat engines that Lopez

17   might have received a kickback for, some computer items

18   that Mr. Lopez might have used for his personal use, and

19   some floatation vests and some other computer items.  Do

20   you see that?

21     A.    Yes.

22     Q.    Is this the initial information that was

23   reported to the department that started this

24   investigation?

25     A.    Yes.



1      A.    Yes.

2      Q.    And if you'll turn to the third page -- and

3  these are notes from your interview with Officer Latus;

4  correct?

5      A.    Yes.

6      Q.    If you'll go about halfway down, during this

7  interview "Officer Latus said that one of the Zodiac

8  inflatables is no longer with the Marine Unit.  He sees

9  it around Hyde Street Pier but he doesn't know if it was

10 sold or what the process is for disposing of old boats.

11 The person driving the boat is Brent McLain, who is a

12 diver in the area."  Do you see that?

13     A.    Yes.

14     Q.    Was that the first time you had heard of Brent

15 McLain?

16     A.    Yes, to the best of my recollection.

17     Q.    Do you recall having this interview with

18 Officer Latus?

19     A.    Yes.

20     Q.    And do you recall that he told you he doesn't

21 know if the boat being driven by Mr. McLain was sold by

22 the police department and that he doesn't know what the

23 process is for disposing of old police department boats?

24 Do you recall him telling you that?

25     A.    It seems like there's two questions there,



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 9 of 21

SERGEANT JON MCMAHON                                June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                     29

1    Marine Unit boat motors had been stolen?

2             MS. BAUMGARTNER:  Objection.  Vague.

3             THE WITNESS:  To the best of my knowledge, no.

4    BY MS. RENICK:

5        Q.   And on page 10, another entry for December

6    15th, 2010, at 1725 hours.  Officer Laherty called -- it

7    reports that Officer Laherty called and said that he saw

8    the Zodiac boat being driven by Brent McLain and he got

9    the CF number.  Do you see that?

10       A.   Yes.

11       Q.   So at that time, did you have an understanding

12   that Mr. McLain was driving his boat in the waters in

13   the Bay Area?

14            MS. BAUMGARTNER:  Objection.  Vague as to

15   time.

16            THE WITNESS:  Yeah.  I mean, Laherty told me

17   that he saw him driving the boat in the waters, so yes.

18   BY MS. RENICK:

19       Q.   Had Laherty told you how many times he had

20   seen Mr. McLain driving the boat in the waters?

21       A.   I don't remember.

22       Q.   And the next entry, an entry on December 21st,

23   2010, it reports that Laherty called you saying he saw

24   McLain driving the Zodiac boat and that the boat was

25   powered by two 90-horsepower Mercury engines that



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 10 of 21

SERGEANT JON MCMAHON                                      June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                       30

1    belonged to the Marine Unit prior.  Do you see that?

2        A.   Yes.

3        Q.   Did he tell you why he thought those engines

4    belonged -- previously belonged to the Marine Unit?

5        A.   You know, he referred to it like as a car --

6    people who are into cars, they know exactly all the

7    different parts on the car, wheels and tires and that

8    type of thing.  I think it was the same with the boats.

9    They dealt with these boats every day, saw these boats

10   every day.  They knew them inside and out.  They had a

11   number of them in their fleet and so he believed that

12   those were the same ones that were on the -- with the

13   Marine Unit prior.

14       Q.   And then the next sentence says, "The boat

15   also contained a radar system that looked similar to

16   radar used by the Marine Unit."  Do you see that?

17       A.   Yes.

18       Q.   Did he tell you -- strike that.

19            And then it continues, "Laherty thought the

20   radar might have belonged to the Marine Unit."  Did he

21   tell you any other reason why he thought the radar might

22   have belonged to the Marine Unit other than it looked

23   similar to the radar that they used?

24       A.   No.

25       Q.   And then for an entry on December 22nd, 2010,



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 11 of 21

SERGEANT JON MCMAHON                              June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                    46

1      A.    I was trying to figure out the process here

2    with the boats and how they were registered and licensed

3    and just the way it works.  He deals with the whole

4    fleet, so that's his job, so I was just trying to get

5    some knowledge from him as to how this worked.

6      Q.    And Officer Lee -- if you'll turn to page 16,

7    the second paragraph from the bottom, you report that

8    Officer Lee said there'd only been one boat turned in,

9    which was in 2005, and that the boat had been completely

10   stripped of all the equipment.  Do you see that?

11     A.    Yes.

12     Q.    And you also note that there may be a

13   discrepancy and that the Marine Unit personnel state

14   that the Zodiac that we're talking about is Boat 2, but

15   the paperwork says it's Boat 3; right?

16     A.    Correct.  Yes.

17     Q.    And Officer Lee advised you that this boat,

18   this Zodiac boat that's the subject of this

19   investigation that we've been talking about today, went

20   to Central Shops and was sold at auction; correct?

21     A.    Right, the hull.

22     Q.    He said the hull had gone to Central Shops and

23   was sold at auction?

24     A.    Right.

25     Q.    Then the very next day, on January 11, 2011,



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 12 of 21

SERGEANT JON MCMAHON                                    June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                        50

1    Inspector Keller made notifications to Tidwell and

2    Mahoney.   I don't remember who actually determined -- we

3    went -- I mean, it was determined, after talking about

4    what the situation was, that the boat would be towed.

5    To the best of my recollection, Commander Mahoney would

6    have made the decision based on information that he was

7    given by us.

8        Q.   What information did you give him for this

9    determination to seize the boat?

10           MS. BAUMGARTNER:   Objection.   Misstates --

11   mischaracterizes testimony that he actually spoke to

12   Commander Mahoney.

13   BY MS. RENICK:

14       Q.   Do you know what information was given to

15   Commander Mahoney that -- in order for the determination

16   to seize the boat was made?

17           MS. BAUMGARTNER:   Objection.   Calls for

18   speculation.

19           You can state what you know.

20           THE WITNESS:   Well, we were -- we were under

21   the idea that the boat was -- that there was items on

22   the boat that might have been stolen.   We compared the

23   serial numbers on the engines and they were the same as

24   the ones that we had in the police department and which

25   had supposedly, according to Fleet and Rich Lee and



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 13 of 21

SERGEANT JON MCMAHON                                    June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                        52

1    at the numbers, so --

2         Q.    Who did go and look at the numbers?

3         A.    I don't remember.

4         Q.    And when you say "numbers," are you talking

5    about serial numbers?

6         A.    Yeah, serial numbers.

7         Q.    Do you have any understanding where the serial

8    numbers are located on the engines that were on

9    Mr. McLain's boat?

10        A.    I don't remember.

11        Q.    Prior to this time, had you done investigation

12   into the serial numbers of engines that had previously

13   belonged to the San Francisco Police Department Marine

14   Unit?

15        A.    I believe so.  I'm not -- I'm not -- I don't

16   remember a hundred percent.  It might be in my chron.

17        Q.    And you said that -- you said you believe

18   there may be items that were stolen that were on this

19   boat, "items" being plural, and then you mentioned

20   "engines."  Were there any other items that you believed

21   may have been on the boat that were stolen?

22        A.    Well, the sponsons, which are the rubber tubes

23   that go around the boat, said "San Francisco Police" on

24   them.  You could still see it on there, so we were under

25   the impression that they were never sold at auction or



1    went through Fleet, according to Rich Lee and Central

2    Shops, so that showed us that -- we felt that that was a

3    Marine Unit boat.  The console was supposedly the same

4    and was supposedly the other item that we believe was

5    stolen or gotten in a wrong way somehow.

6         Q.    Any other items?

7         A.    Well, there was other items on the boat

8    that -- that looked like what was on the Marine Unit

9    boat.  I mean, so do you want -- what's your question?

10   Do you want to know exactly --

11        Q.    Which items that you believed, at that time

12   that you seized the boat, were stolen.

13        A.    I mean, all we knew for sure were the engines

14   because of the serial numbers.  From what I remember,

15   the rest of the items looked the same.  We didn't have

16   serial numbers.  You couldn't say one hundred percent,

17   oh, yeah, that was on another boat.

18        Q.    And when you said -- you mentioned the

19   sponsons and that you -- that was based on the

20   discussion you had with Officer Lee at Fleet, that the

21   boat was sold without any equipment; correct?

22             MS. BAUMGARTNER:  Objection.  Vague.

23             What's the question?

24             THE WITNESS:  What does that have to do with

25   the sponsons?  I don't understand what you're saying.



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 15 of 21

SERGEANT JON MCMAHON                                          June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                              54

1   BY MS. RENICK:

2        Q.   Did you believe at that time that the boat was

3   seized that sponsons may have been stolen from the

4   police department?

5        A.   Yes.

6        Q.   And was that belief based on a discussion you

7   had with Officer Lee the previous day?

8        A.   It was based on that, conversations with

9   officers that were in the Fleet Unit -- or the Marine

10  Unit.

11       Q.   The entry at 1600 hours, at 4:00 p.m., says,

12  "It was determined that we would seize the boat and tow

13  it to CSI."  Was there any discussion regarding whether

14  or not to get a search warrant prior to seizing the

15  boat?

16            MS. BAUMGARTNER:  Objection.  Calls for

17  speculation.

18            You can talk about whether -- his personal

19  knowledge only.

20  BY MS. RENICK:

21       Q.   Do you know if any discussions between any of

22  the officers that were present or any other officers --

23  strike that.

24            Do you know of any discussions about whether

25  or not to obtain a search warrant prior to seizing the



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 16 of 21

SERGEANT JON MCMAHON                                    June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                      56

1   a while.  How had you been looking for the boat?  What

2   steps were you taking to look for the boat?

3        A.   We started way up --- I don't know what pier

4   it is, but the south end of the bay, basically, kind of

5   almost as far as -- a little past Army Street, and

6   physically went to all the piers and made our way down.

7   We first started at Pier 50.  That's where we saw it was

8   registered, at Pier 50.  I believe it was Shed D.  The

9   boat wasn't there, so we started looking at all the

10  piers and making our way north.

11       Q.   And so you're referring to this same date of

12  January 11th, 2011, that you were looking for the boat?

13       A.   Yeah, that was one of the days.  Yes.

14       Q.   Were there any other days prior to that that

15  you had been looking for the boat?

16       A.   Yeah, I don't remember.  We were up in Napa

17  because we had seen that Brent McLain had a house up

18  there, so we searched up there just to get a lay of the

19  land and see if it was sitting outside or something like

20  that, so I don't remember when that was.

21       Q.   And prior to January 11th, 2011, other Marine

22  Unit officers had told you that they had seen Mr. McLain

23  driving the boat out in the San Francisco Bay waters;

24  correct?

25       A.   Yes.



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 17 of 21

SERGEANT JON MCMAHON                                    June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                        58

1    located on a boat?

2        A.   It may be in my chron.   I don't remember for

3    sure.

4        Q.   At this point in time, on January 11th, 2011,

5    approximately 4:00 p.m., did you have any understanding

6    as to where a HIN number would be located on a boat?

7        A.   Me personally?

8        Q.   Yes.

9        A.   I just don't remember the time frame.   I can't

10   answer that question.

11       Q.   Do you know if any of the other officers that

12   were present at that time had any understanding as to

13   where to find a HIN number on a boat?

14       A.   I don't remember.

15       Q.   So after you made -- the determination was

16   made at approximately 4:00 p.m. that the boat would be

17   seized, it states that at 1640, Officer Bettencourt with

18   the Marine Unit advised that the boat could not be

19   pulled out of the water due to low tide; correct?

20       A.   Yes.

21       Q.   And he advised it could not be towed until

22   8:00 a.m. the next day; correct?

23       A.   I don't remember the exact time, but something

24   like that, yes.

25       Q.   Did the department then conduct surveillance



Case 3:12-cv-03225-MEJ   Document 27-1   Filed 07/18/13   Page 18 of 21

SERGEANT JON MCMAHON                                          June 26, 2013
MCLAIN vs. CITY & COUNTY OF SAN FRANCISCO                              65

1          MS. BAUMGARTNER:  You mean what equipment did

2     he believe was inappropriately sold or stolen?  I think

3     he's already answered that question.

4     BY MS. RENICK:

5          Q.   It identifies E2 through E4 as being equipment

6     which was inappropriately sold or stolen; correct?

7          A.   Yes.

8          Q.   And E2 refers to the boat engines, E3 refers

9     to the radar, and E4 refers to the sponsons; correct?

10         A.   Yes.

11         Q.   Was there any other equipment on the boat that

12    you believed was inappropriately sold or stolen?

13         A.   Yes.

14         Q.   What?

15         A.   I'm not basing this on serial numbers, I'm

16    just basing it on what was seen on the boat.  And as I

17    said, the console, the big roll bar -- I don't know what

18    they call it -- on there, everything looked the same as

19    the boat that the Marine Unit had at one time.  I

20    couldn't say positively that was it, but none of these

21    items left the police department.  Nothing was sold

22    through Fleet, through Central Shops, through an

23    auction.  The only thing that was sold was the hull,

24    according to what I was told, and through my

25    investigation I determined that.  So all the rest of the



1    items that looked similar, we believed were stolen or

2    gotten inappropriately.

3        Q.    Prior to seizing this boat, had you looked

4    for -- had you identified what the serial number was for

5    the radar that was on Mr. McLain's boat?

6        A.    I'm sorry.  Can you ask the question again?

7        Q.    Had you identified the serial number for the

8    radar that was on Mr. McLain's boat prior to seizure?

9        A.    I don't remember.

10       Q.    Had you identified serial numbers for radars

11   that belonged to the Marine Unit, prior to seizure of

12   this boat?

13       A.    No.  I personally had not, no.

14       Q.    Had anyone in the police department done so?

15       A.    I wouldn't know that.  It would be

16   speculation.  I'm not sure.

17       Q.    If they had, would it be in your report?

18            MS. BAUMGARTNER:  Objection.  Calls for

19   speculation.

20            THE WITNESS:  You know, if I didn't know or --

21   there's a chance that it might not be in my report.  I

22   would hope I included everything.

23   BY MS. RENICK:

24       Q.    Prior to the seizure of the boat, had you done

25   any investigation into whether or not there was any



1      A.    Yes.

2      Q.    And then on April 28th, 2011, the boat was in

3   fact dismantled at the direction of the police

4   department; correct?

5      A.    Yes.

6      Q.    And at that time, you found a HIN number on

7   the boat; correct?

8      A.    Yes.

9      Q.    And you noted that the HIN number on McLain's

10  registration is one number off the HIN that you found on

11  the hull of his boat when you took it apart; correct?

12     A.    Yes.

13     Q.    And you believe that's -- do you believe

14  that's a clerical mistake, the discrepancy in the

15  numbers?

16     A.    Yes.

17     Q.    Did you -- did you talk to anyone at Central

18  Shops to find out if they were capable of dismantling

19  the boat?

20     A.    Yes.

21     Q.    Who did you talk to?

22     A.    I don't remember.

23     Q.    And what did they tell you in that respect?

24     A.    That they could dismantle the boat.  They had

25  somebody there that was -- knew about the boat and --



1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were administered an oath; that a record of

7     the proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction;

9     that the foregoing transcript is a true record of the

10    testimony given.

11         Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    transcript [X] was [ ] was not requested.

15         I further certify I am neither financially

16    interested in the action nor a relative or employee of

17    any attorney or any party to this action.

18         IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated:   July 1, 2013

22

23    _____

24

25    KATHY NELSON, CSR No. 9796

