1
2
3
4
5
6

UNITED STATES  DISTRICT COURT

Northern District of California

7    BRENT MCLAIN and MYLAN TRANG,                    No. C 12-3225 MEJ

8                          Plaintiffs,               **ORDER ON CROSS-MOTIONS FOR**
                                                     **SUMMARY JUDGMENT**
9           v.

     CITY AND COUNTY OF SAN FRANCISCO,               Re: Dkt. Nos. 26, 29
10   *et al.*,

11                         Defendants.
                                                  /
12

13                            **I.   INTRODUCTION**

14          Plaintiffs Brent McLain and Mylan Trang filed this action against Defendants City and

15   County of San Francisco and several San Francisco Police Department ("SFPD") officers,[1] alleging

16   that on January 12, 2011, officers unlawfully seized Plaintiffs' boat and its equipment without a

17   warrant or probable cause.  Compl., Dkt. No. 1 at ¶ 2.  Plaintiffs allege that they were forced to seek

18   an order from the state court for return of the property, and when Defendants finally complied with

19   the order, they returned the property in pieces and damaged.  *Id*. ¶¶ 3-5.  As a result, Plaintiffs assert

20   that they incurred significant costs from reassembly, repairs, and their inability to use the boat and

21   equipment for over 15 months.  *Id*. ¶ 6.  Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for

22   unlawful seizure in violation of the Fourth Amendment and unlawful taking without just

23   compensation in violation of the Fifth Amendment, and state law claims for violation of Article 1,

24   sections 13 and 19 of the California Constitution, trespass to real property, conversion, and

25   negligence.  *Id*. at 12-20.

26   _____

27          [1]  Plaintiffs have named as defendants: SFPD Officers Alberto Duarte, Darcy Keller, Danny
     Lopez, Keither Matthew, John McMahon, Mark Mopas, and Peter Walsh.  Dkt. Nos. 1, 34.
28   Plaintiffs also assert claims against SFPD Commander Daniel Mahoney and SFPD Director James
     Tidwell.  Dkt. No. 34.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    Pending before the Court are Defendants' Motion for Summary Judgment (Dkt. No. 26), and

2    Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 29).  On August 29, 2013, the Court held

3    a hearing in this matter.  After careful consideration of the parties' written submissions, controlling

4    authorities, and oral argument, the Court **GRANTS** summary judgement in favor of Defendants and

5    **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

6                                **II.  BACKGROUND**

7           The following facts, taken from the parties' Joint Statement of Undisputed Material Facts

8    (("UMF") Dkt. No. 40) are undisputed.  In 1999, McLain was hired by the City of San Francisco as a

9    pile driver and diver.  UMF ¶ 3.  Since 2008, McLain has worked at the Port Authority.  *Id.* ¶ 4.

10   During his work at the Port, McLain had a master key to the SFPD Marine Unit's storage building for

11   marine equipment.  *Id.* ¶ 5.  McLain also had business connections with members of the San

12   Francisco Marine Unit.  *Id.* ¶ 6.

13          Plaintiffs own and operate SF Boat Support, a business providing boat charters, tours, and

14   other similar services in the San Francisco Bay Area.  *Id.* ¶ 1.  On January 10, 2010, McLain bought a

15   1992 Zodiac Hurricane boat for the business from a private seller after seeing it advertised on

16   Craigslist.  *Id.*  McLain submitted the required documentation for the boat to the California

17   Department of Motor Vehicles ("DMV").  *Id.* ¶ 2.  The DMV inspected the boat, recorded the Hull

18   Identification Number ("HIN"), and issued a Certificate of Ownership.  *Id.*

19          In late 2010, SFPD's Internal Affairs Division began investigating the possible

20   misappropriation of City funds by the SFPD Marine Unit Sergeant.  *Id.* ¶ 7.  The investigation was

21   initiated because a former Marine Unit officer reported possible improper actions by the Marine Unit

22   Sergeant, including: (1) the sergeant might have received a kick-back from a vendor when he bought

23   two boat engines; (2) the sergeant might have used SFPD funds to buy computer equipment for

24   personal use; and (3) the sergeant might have used SFPD funds to buy two flotation vests for personal

25   use.  *Id.* ¶ 8.  In November 2010, Sgt. John McMahon took over the investigation.  *Id.* ¶ 9.  Soon

26   thereafter, Sgt. McMahon and SFPD Officer Peter Walsh interviewed the former Marine Unit officer.

27   *Id.* ¶ 10.  The Marine Unit officer repeated his previous claims regarding the computer equipment and

28

2

1    flotation vests, and added that he had seen McLain operating an old SFPD Zodiac around Hyde Street

2    Pier. *Id.* ¶ 11.  On December 2, 2010, Sgt. McMahon and Ofc. Walsh interviewed Marine Unit

3    Officer Mark Laherty.  *Id.* ¶ 12.  Ofc. Laherty told the officers that he had seen a Zodiac boat that was

4    no longer being used by the Marine Unit in the possession of McLain.  *Id.* ¶ 13.  Ofc. Laherty also

5    told the investigators that McLain possibly worked at Pier 50 as a Port Maintenance Supervisor; that

6    equipment was missing from the Marine Unit, but he did not know what happened to it; that he felt

7    the Marine Unit would have a difficult time passing an audit; and that there is no accounting for items

8    that are ordered.  *Id.* at ¶¶ 14-16.  Subsequently, on December 8, 2010, Sgt. McMahon again spoke

9    with Ofc. Laherty.  *Id.* at ¶ 17.  At that time, Ofc. Laherty said that he was trying to locate the Zodiac

10   in McLain's possession and that it may be at Pier 50/52.  *Id.*

11          On December 15, 2010, Sgt. McMahon and Ofc. Walsh met with Marine Unit Sergeant Keith

12   Matthews.  *Id.* ¶ 18.  Sgt. Matthews told the investigators that his team was conducting an inventory

13   of all the equipment belonging to the Marine Unit.  *Id.* ¶ 18.  Sgt. Matthew also told the investigators

14   that he heard McLain had purchased his Zodiac boat at an auction.  *Id.* ¶ 19.  He told Sgt. McMahon

15   and Ofc. Walsh that Port Authority workers had access to the part of the Marine Unit's shed where

16   they stored their equipment.  *Id.* ¶ 20.  He indicated that his supervisor had asked him where the radar

17   equipment on McLain's boat had come from and whether McLain had stolen the radar equipment

18   from the Marine Unit.  *Id.* ¶ 21.  Matthew told his supervisor that he did not know, but he did not

19   think that any radar equipment was missing from their inventory.  *Id.*  That same day, Ofc. Laherty

20   called Sgt. McMahon to report seeing McLain driving the Zodiac boat near Marine Unit

21   headquarters.  *Id.* ¶ 22.

22          A week later, on December 21, 2010, Ofc. Laherty called McMahon to provide the Zodiac's

23   registration number.  *Id.* ¶ 23.  He also told Sgt. McMahon that the boat was powered by two 90HP

24   Mercury Engines that previously belonged to the Marine Unit.  *Id.*  Ofc. Laherty stated that he

25   thought the radar system belonged to the Marine Unit because it looked similar to one the Marine

26   Unit had.  *Id.*  He also indicated that he believed the way the Zodiac was outfitted was strange.  *Id.*

27          Throughout late 2010, Sgt. McMahon and Ofc. Walsh spoke to McLain multiple time about

28

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1  the Zodiac boat.  *Id*. ¶ 24.  On December 23, 2010, Sgt. McMahon met with McLain at his work area

2  at Pier 80.  *Id*. ¶ 25.  At that time, McLain told Sgt. McMahon that he found the Zodiac boat through

3  an ad on Craigslist, and that he met the seller in a parking lot and purchased the boat for $5,000.  *Id*.

4  ¶¶ 26-28.

5       On January 3, 2011, Sgt. McMahon received a registration and Bill of Sale from the

6  California DMV, which indicated that McLain bought the Zodiac boat from a man named Donald

7  Carmignani for $500.  *Id*. ¶ 29.  After receiving this information, Sgt. McMahon contacted McLain;

8  McLain told Sgt. McMahon that he could not find the paperwork regarding the Zodiac's registration.

9  *Id*. ¶ 30.

10      Later that day, Sgt. McMahon received information that McLain's Zodiac was seen near

11  Fisherman's Wharf.  *Id*. ¶ 32.  Sgt. McMahon responded to the area and searched the various piers

12  and Port Authority buildings, but did not locate the boat.  *Id*.

13      The follow day, on January 4, 2011, Ofc. Walsh contacted Carmignani.  *Id*. ¶ 33.  Carmignani

14  told Ofc. Walsh that he would not answer any questions about the Zodiac boat.  *Id*.  Sgt. McMahon

15  and Ofc. Walsh also contacted Craigslist for information on the ad, but Craigslist staff could not

16  locate any old ads for the Zodiac.  *Id*. ¶ 34.  That day, McLain called Ofc. Walsh and told him that the

17  $500 listed on the Bill of Sale must have been a clerical mistake.  *Id*. ¶ 35.

18      During this time, officers searched for the Zodiac on Piers 50 and 72 and in Napa, but were

19  unable to locate it.  *Id*. ¶¶ 36-39.

20      On January 5, 2011, Ofc. Walsh learned from Central Shops that Marine Boat 161 (Marine 3)

21  was auctioned in 2005 by Nationwide, which is no longer in business.  *Id*. ¶ 43.  Central Shops is run

22  by the City and County of San Francisco and is where the City fixes and does maintenance on City

23  vehicles, including police, fire, and public works vehicles.  *Id*. ¶ 41.  Cental Shops sends out retired

24  or disposed city vehicles and vessels to auction companies.  *Id*. ¶ 42.  The same day, Sgt. McMahon

25  received records from Central Shops showing that a Zodiac hull without the engines, radar, radios or

26  gauges was turned in to the Fleet Office on June 16, 2005.  *Id*. ¶ 44.  Two different HIN were listed

27  on the turn-in record, one of which was only one digit off from the boat registered to McLain.  *Id*.

28

4

1    The following day, on January 6, 2011, Sgt. McMahon received a fax from Peter Aviles at Central

2    Shops stating that the Zodiac hull had been sold at an auction on June 25, 2005 for $1.00. *Id*. ¶ 45.

3    Subsequently, Sgt. McMahon met with Officer Rich Lee of SFPD's Fleet Office. *Id*. ¶ 46. Ofc. Lee

4    told Sgt. McMahon that Marine 2 was the only boat turned in to the Fleet Office during 2005 and that

5    it had been stripped of all equipment. *Id*. Ofc. Lee did not know why there were two HIN numbers

6    on Central Shop's paperwork. *Id*. Ofc. Lee also told Sgt. McMahon that it did not appear that the

7    Marine Unit Sergeant kept good records regarding Marine Unit boats and equipment and that he did

8    not know how many boats were assigned to the Marine Unit. *Id*. ¶ 47.

9        On January 11, 2011, Sgt. McMahon met with Officers Darcy Keller and Alberto Duarte and

10   discussed the investigation of the boat. *Id*. ¶ 49. They determined that three search warrants needed

11   to be written and served to the Marine Unit, the home and vehicle of the Marine Sergeant's house,

12   and Eagle Marine. *Id*. After the meeting, Sgt. McMahon and several SFPD officers searched the

13   waterfront for McLain's boat. *Id*. ¶ 50. After hours of searching, sometime between 1:00 p.m. and

14   4:00 p.m., officers found McLain's boat moored at the Hyde Street Harbor. *Id*. ¶ 51. While

15   examining the boat, officers saw SFPD decals through the paint on the sponsons (the rubber tubing

16   around the boat) and identified the engines as registered to the SFPD by their serial numbers. *Id*. ¶

17   52. Sgt. McMahon testified that the boat's radar, console, and roll bar looked like SFPD equipment.

18   *Id*. ¶ 53. According to Sgt. McMahon's report, the officers determined at 4:00 p.m. that they would

19   seize the boat and tow it to Crime Scene Investigations. *Id*. ¶ 54. The officers did not search the boat

20   for its HIN prior to that time. *Id*. ¶ 56. However, before towing the boat, multiple officers search for,

21   but could not locate a visible HIN. *Id*. ¶ 57. The officers sought assistance from members of the

22   Marine Unit to conduct the towing. *Id*. ¶ 58. At approximately 4:40 p.m., the Marine Unit indicated

23   that they could not tow the boat until the following morning due to the tides. *Id*. ¶ 59. The boat was

24   towed at 10:15 a.m. on July 12, 2011. *Id*. ¶ 61. The officers did not obtain a warrant before seizing

25   the boat. *Id*. ¶ 62.

26       That same day, Sgt. McMahon called Ofc. Lee for a second interview. *Id*. ¶ 64. During the

27   interview, Ofc. Lee stated that the Zodiac boat had been stripped when it was turned into to Fleet. *Id*.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

¶ 65.  Ofc. Lee also stated that he did not remember the inflatable tubes being with the boat when he inspected it; rather, he recalled that only the hull was turned in.  *Id*. ¶ 65.  He did not recall seeing any radios, engines, or radar with the boat.  *Id*.

Two days later, on January 14, 2011, Ofc. Laherty told Sgt. McMahon that the engines and radar on McLain's boat were the same type as those used by the Marine Unit, but he could not identify the engines through a specific number and could not confirm the radar because the Marine Unit Sergeant did not share the radar records.  *Id*. ¶ 66.  Subsequently, on January 20, 2011, investigators searched Central Shop records, but there was no listing for a Zodiac boat marching McLain's.  *Id*. ¶ 67.  The listing for the boat in McLain's possession did not clarify if only the hull was sold or whether it was sold with any items attached.  *Id*.

On February 16, 2011, Sgt. McMahon contacted the radar manufacturer to check the serial number on the seized radar.  *Id*. ¶ 68.  The manufacturer had no record of the radar belonging to the SFPD.  *Id*.  The next day, on February 17, 2011, Sgt. McMahon noted in his report that the engines on McLain's Zodiac were registered to the SFPD and never sold at auction.  *Id*. ¶ 69.

Thereafter, on April 27, 2011, SFPD decided to take the boat apart and remove the sponsons, engines, radar and other equipment that it suspected belonged to the SFPD, and dismantled the boat the next day.  *Id*. ¶ 70.  It was only after the officers dismantled the boat that they found the HIN number.  *Id*.

The following month, on May 24, 2011, Sgt. McMahon spoke to the owner of Oceanus, Daniel Smith.  *Id*. ¶ 71.  Smith indicated that the HIN molded to the hull on the back of the boat by the water line is put there by Oceanus.  *Id*.  He indicated that there is a Capacity Plate with HIN on the transom and there is a hidden HIN on the back starboard of the hull under the sponson.  *Id*.

On May 31, 2011, Sgt. McMahon received a declination memo from the District Attorney's office stating that there was insufficient evidence to sustain a criminal prosecution.  *Id*. ¶ 73.  In the interim, in March 2011, McLain filed a motion to return property in San Francisco Superior Court.  *Id*. ¶ 74.  SFPD filed an opposition to the Motion.  *Id*.  The court held three hearings on the special proceedings, during which the court received evidence and heard testimony from Sgt. McMahon and

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Ofc. Duarte. *Id.* ¶ 73. The court ultimately rejected SFPD's arguments and ordered McLain's

2  property to be returned. *Id.* ¶ 76. When the boat was returned on September 13, 2011, it was

3  returned in a dismantled state, with many of the parts damaged and in boxes. *Id.* ¶ 77.

4        Subsequently, on June 21, 2013, McLain and Trang filed the instant action against the City

5  and the SFPD Officers involved. Plaintiffs assert federal claims pursuant to 42 U.S.C. § 1983 for: (1)

6  unlawful seizure in violation of the Fourth Amendment (Claims One and Two); and (2) unlawful

7  taking without just compensation in violation of the Fifth Amendment (Claim Three). Compl. at 12-

8  20. Plaintiffs also assert state law claims for: (1) violation of California Constitution, Article 1,

9  Section 13 for unlawful seizure (Claims Four and Five) and unlawful taking (Claim Fix); (2) trespass

10  to personal property (Claim Seven); (3) conversion (Claim Eight); and (4) negligence (Claim Nine).

11  *Id.*

12        Defendants and Plaintiffs now move for summary judgment.

13  ### III. LEGAL STANDARD

14        Summary judgment is appropriate where the pleadings, depositions, answers to

15  interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

16  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

17  Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the

18  Court of the basis for its motion and of identifying those portions of the pleadings and discovery

19  responses that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v.*

20  *Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in

21  favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). If the

22  moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can

23  demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*,

24  477 U.S. at 325.

25        Once the moving party meets its burden, the burden shifts to the nonmoving party opposing

26  the motion, who must "set forth specific facts showing that there is a genuine issue for trial."

27  *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing

28

1  sufficient to establish the existence of an element essential to that party's case, and on which that

2  party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  A genuine issue exists if "the

3  evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material

4  facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477

5  U.S. at 248.  There is no genuine issue of fact "[w]here the record taken as a whole could not lead a

6  rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio

7  Corp.*, 475 U.S. 574, 587 (1986).

8      It is not the Court's task "to scour the record in search of a genuine issue of triable fact."

9  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Counsel has an obligation to lay out their

10  support clearly.  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

11  The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where

12  the evidence is not set forth in the opposing papers with adequate references so that it could

13  conveniently be found." *Id.*

14              **IV.  DISCUSSION**

15  **A.    Whether Plaintiff Trang Has Standing**

16      As a threshold matter, Defendants argue that Plaintiff Trang lacks standing to assert any claim

17  based on loss of property because she did not have an ownership interest in the vessel.  Def. Mot. at

18  13.  In response, Plaintiffs argue that Trang has standing because she married McLain on January 11,

19  2011 – the day before the seizure occurred – so she may claim a community property interest in the

20  vessel.  Pl. Opp. at 10.  Plaintiffs also argue that the boat was purchased to be used in Plaintiffs' boat

21  charter business, which is owned by Trang.  *Id.*  They argue that the business lost significant income

22  and goodwill as a result of Defendants' seizure of the boat for nearly eight months, and thus Trang

23  has standing to assert the claims in this action.  *Id.*

24      As to Plaintiffs' assertion that Trang has a community property interest in the boat,

25  Defendants argue that McLain bought the boat in 2010 – before she and McLain were married – and

26  thus the boat is separate property, rather than community property.  Def. Reply at 7.  Under

27  California law, absent an agreement to the contrary, separate property of a married person includes all

28

8

1  property acquired by the person *before* marriage.  Cal. Const., Art. I, § 21; Cal. Fam. Code §

2  770(a)(1).  The Court therefore agrees with Defendants that the boat is properly characterized as

3  separate property.

4          As to Plaintiffs' argument that Trang's ownership of the business confers standing, Plaintiffs

5  have failed to explain why Trang – rather than the business – is the proper Plaintiff to assert any

6  claim for damages sustained as a result of the seizure of the boat and loss of business.  Plaintiffs'

7  argument is thus unavailing.

8          Because Plaintiffs have failed to identify a basis to confer standing on Trang to assert claims

9  in this action, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff Trang from this

10 lawsuit.

11 **B.      Section 1983 Claims for Violations of the Fourth Amendment**

12         As indicated above, McLain asserts two claims pursuant to § 1983 for violation of the Fourth

13 Amendment.  Compl. at 12-13.  In his first claim, McLain alleges that Defendants unlawfully seized

14 his boat and equipment without a warrant or probable cause in violation of the Fourth Amendment.

15 *Id*. ¶¶ 64-65.  In his second claim, McLain alleges that Defendants violated his Fourth Amendment

16 rights by seizing his boat and equipment for over ninths months without probable cause and

17 dismantling and damaging the boat while it was unlawfully in their possession.  *Id*. ¶¶ 71-72.

18         Defendants move for summary judgment on McLain's Fourth Amendment claims, arguing

19 that the Officers had probable cause to tow the boat because it had no visible HIN and because they

20 believed it contained stolen property.  Def. Mot. at 7-8.  Defendants further argue that no Fourth

21 Amendment violation occurred when SFPD retained and dismantled the boat.  *Id*. at 8-9.

22         McLain, however, maintains that Defendants are collaterally estopped from litigating whether

23 probable cause existed because the state court determined that it did not when it granted his motion

24 for return of property.  Pl. Mot. at 10-13.  Even if collateral estoppel does not apply, McLain argues

25 that Defendants cannot establish that probable cause existed for either the initial search and seizure of

26 the boat, or the Defendants' continued seizure of the boat and equipment for over nine months.  Pl.

27 Mot. at 14-17; Pl. Opp. at 2-4.

28

**United States District Court**
**For the Northern District of California**

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1.   <u>Whether Defendants Are Precluded From Litigating Probable Cause</u>

    a.   *The State Court Proceedings*

In March 2011, Plaintiff filed a motion to return property in San Francisco Superior Court, thereby initiating the proceeding entitled *People of the State of California v. Brent McLain*, Case No. 2458605.  McLain Decl. ¶ 8, Dkt. No. 31.  On March 17, 2011, the state court issued an Order to Show Cause to SFPD to show why the boat, Mercury engines, and radar unit should not be delivered to McLain.  Renick Decl., Ex. C, Dkt. No. 30-3.  On March 30, 2011, SFPD filed an opposition to McLain's motion and submitted declarations in support.  McLain Decl. ¶ 9; Renick Decl., Ex. D, Dkt. No. 30-4.  In its brief, SFPD argued that it opposed return of the property "on the grounds that . . . the evidentiary utility of the listed property has not been exhausted in the context of the criminal investigation."  Renick Decl., Ex. D at 1.  The attorney for SFPD, Ronnie Wagner, submitted a declaration in support of the opposition, wherein she proffered that:

> On confirming the absence of HIN, SFPD had probable cause to a suspect a violation of Cal. Veh. Code section 9872.1(a), however, the further evidence gained during the investigation as set forth herein constituted probable cause to suspect (inter alia) a violation of Cal. Penal Code section 496, Receive Known Stolen Property, thereby taking the investigation beyond a mere failure to display hull numbers.  Accordingly, the seizure of the boat was justified on independent legal grounds.

Renick Decl., Ex. E at 4.  The state court held three hearings on the motion.  McLain Decl. ¶ 9.  After the second hearing, the state court indicated that it needed additional information and counsel for SFPD indicated that she wanted to opportunity to file supplemental declarations.  Renick Decl., Ex. F at 3:10-18.  On April 8, 2011, the state court held a hearing, during which time it heard testimony from McLain and Ofc. Duarte.  Renick Decl., Ex. F.  Sgt. McMahon also testified under oath at one of the hearings.  McLain Decl. ¶ 9.  On July 15, 2011, the state court issued an Order for Return of Property, ordering the San Francisco District Attorney, SFPD Police Chief, and the City and County of San Francisco to release the boat and equipment seized to McLain.  Renick Decl., Ex. G; McLain Decl. ¶ 10.  McLain thereafter filed a motion to reconsider or modify order for return of property, which the state court granted on September 2, 2011, and directed the parties to confer and agree to a date on or before September 23, 2011 for the return of his property.  *Id.*, Ex. H.  SFPD returned the

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1   dismantled boat and equipment to McLain on September 13, 2011.  McLain Decl. ¶ 11.

2                   *b.*        *Collateral Estoppel Does Not Apply*

3       In his Motion, McLain argues that the state court has already found that SFPD lacked

4   probable cause to seize the boat and equipment, and thus the City, Sgt. McMahon, and Ofc. Duarte

5   are collaterally estopped from relitigating that issue.  Pl. Mot. at 10.

6       In § 1983 actions, state law governs whether collateral estoppel applies to preclude

7   relitigation of issues decided by a state court judgment.  *Ayers v. City of Richmond*, 895 F.2d 1267,

8   1270 (9th Cir. 1990).  Generally, "[c]ollateral estoppel, or issue preclusion, prevents parties or their

9   privies from relitigating issues litigated and decided in a prior proceeding."  *Happy Nails & Spa of*

10  *Fashion Valley, L.P. v. Su*, 217 Cal. App. 4th 1459, 1469 (2013).  "For an issue to be precluded from

11  relitigation, the following requirements must be satisfied: (1) the issue must be identical to an issue

12  decided in a prior proceeding; (2) the issue must have been actually litigated in the prior proceeding;

13  (3) the issue must have been necessarily decided in the prior proceeding; (4) the decision in the prior

14  proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must

15  have been a party to or in privity with a party to the prior proceeding."  *Id.* (citing *People v. Garcia*,

16  39 Cal. 4th 1070, 1077 (2006); *Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 481 (2001)).

17      Defendants contend that collateral estoppel is inapplicable to the lawfulness of the seizure

18  because: (1) the issue was not actually litigated or decided in the state court proceedings; and (2)

19  there is no privity between Defendants in this matter and the People of California, who was the

20  named defendant in the state court proceedings.  The Court agrees.

21                  *i.  Identical Issues*

22      The identical issue requirement of collateral estoppel "addresses whether 'identical factual

23  allegations' are at stake in the two proceedings."  *Lucido v. Superior Court*, 51 Cal. 3d 335, 342

24  (1990).  "To determine whether two proceedings involved identical issues, courts 'consider several

25  factors: Is there a substantial overlap between the evidence or argument to be advanced in the second

26  proceeding and that advanced in the first?  Does the new evidence or argument involve application of

27  the same rule of law as that involved in the prior proceeding?  Could pretrial preparation and

28

                                              11

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  discovery relating to the matter presented in the first action reasonably be expected to have embraced

2  the matter sought to be presented in the second?  How closely related are the claims involved in the

3  two proceedings?'" *Happy Nails & Spa*, 217 Cal. App. 4th at 1470 (quoting *Burdette v. Carrier*

4  *Corp*., 158 Cal. App. 4th 1668, 1689 (2008)).

5        McLain contends that he sought the order for return of property pursuant to California Penal

6  Code section 1540, which provides: "If it appears that the property taken is not the same as that

7  described in the warrant, or that there is no probable cause for believing the existence of the grounds

8  on which the warrant was issued, the magistrate must cause it to be restored to the person from whom

9  it was taken." Pl. Mot. at 11.  According to Plaintiff, "[g]iven that there was no warrant in this case,

10  the court's order necessarily resolved the probable cause issue and is controlling here." *Id*. at 10.  He

11  argues that the facts as to whether or not there was probable cause are the same in both proceedings

12  and the California standard for determining the constitutionality of a search under the Fourth

13  Amendment is identical to the federal standard.  *Id*. at 11.  Thus, Plaintiff asserts that identity of

14  issues requirement is satisfied.

15        Defendants, however, argue that nothing in the record shows that the state court ordered the

16  property returned because it decided that the officers lacked probable cause to tow the boat.  Def.

17  Opp. at 4, Dkt. No. 38.  Defendants point out that the order does not cite Penal Code section 1540 as

18  the controlling authority, does not make any factual findings or state the court's reasoning, and does

19  not make a specific ruling regarding probable cause.  *Id*.  Defendants also argue that a court may

20  order property returned based on a finding that the property is no longer necessary for evidentiary

21  purposes. *Id.* (citing *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987)).  They note

22  that in the opposition brief filed before the state court, the City argued that the court should not return

23  the boat because of its "continuing evidentiary utility in connection with a pending criminal

24  investigation," and that the April 8, 2011 hearing focused on the evidentiary need for retaining the

25  property.  *Id*. (citing Renick Decl., Exs. D, F).

26        Further, Defendants argue that the state court did not limit itself to considering the facts in the

27  Officer's possession at the time the boat was towed – which are the only facts relevant to the

28

12

1   determination of probable cause at issue in this action.  *Id*. at 4-5.  Particularly, Defendants argue that

2   when considering McLain's motion for return of property, the court considered the discovery that the

3   HIN number on the boat had been scratched out – which the Officers did not know at the time of the

4   tow.  *Id*. (citing Renick Decl., Ex. F at 34:23-26).

5           The Court has considered the parties' arguments and agrees with Defendants that McLain has

6   not demonstrated that the probable cause determination at issue in this proceeding is factually and

7   legally identical to the determination the state court made for return of his property.  As Defendants

8   point out, while the state court considered facts known to the officers before and at the time they

9   seized the boat and equipment, the state court also considered facts adduced during the SFPD's

10  investigation following the seizure.  Thus, the scope of the facts before the state court judge exceed

11  those relevant to a probable cause determination.  Further, the state court order for return of property

12  does not cite the legal authority for its decision or the reasoning supporting it decision.  As

13  Defendants point out, one of the key arguments before the court was whether the evidentiary utility of

14  the property has been exhausted, which is different than a determination of whether probable cause

15  existed.  For these reasons, the Court finds that McLain has failed to demonstrate that the identity of

16  issues element is satisfied in this case.  Consequently, collateral estoppel does not apply.

17                  ii.      *Whether the Issue of Probable Cause Was Actually Litigated*

18          "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it

19  was properly raised, submitted for determination, and determined in that proceeding."  *Happy Nails*

20  *& Spa*, 217 Cal. App. 4th at 1471 (quoting *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511

21  (2009)).  Here, McLain has not provided any citation to the parties' written submissions, oral

22  argument transcript, or court order indicating that the parties' raised and submitted the issue of

23  probable cause or that the state court made any ruling on that issue in when considering the motion

24  for return of property.  Accordingly, the Court finds that this element is not satisfied, precluding

25  application of collateral estoppel.

26                  iii.     *Summary*

27          Because the Court finds that McLain has failed to show that the issue of probable cause is

28

13

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1  identical to the issue at stake in the state court special proceeding for return of property, or that the

2  issue was actually litigated in the state court proceeding, the Court holds that collateral estoppel does

3  not apply.  Accordingly, the Court declines to assess the remaining factors and turns to McLain's

4  claims.

5          2.      Probable Cause

6          McLain's Fourth Amendment claims turn on whether probable cause existed to support

7  Defendants' initial seizure of his boat and equipment, their retention of it for nine months thereafter,

8  and their dismantling of it.  "[P]robable cause is a fluid concept—turning on the assessment of

9  probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of

10  legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).  Whether probable cause existed is

11  determined by an analysis of the totality of the circumstances surrounding the intrusion.  *Id.*  Probable

12  cause to search exists if there is "a fair probability that contraband or evidence of a crime will be

13  found in a particular place." *Id*. at 238.  "The principal components of a determination of . . . probable

14  cause will be the events which occurred leading up to the stop or search, and then the decision

15  whether these historical facts, viewed from the standpoint of an objectively reasonable police officer,

16  amount to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996)  Probable cause does

17  not require a certainty but rather, only a fair probability or a substantial chance that criminal activity

18  took place or is taking place. *United States v. Brooks* 367 F.3d 1128, 1134 (9th Cir. 2004).

19          To determine whether probable cause existed, the Court undertakes a two-step analysis.  *Id*.

20  First, judges must determine the "historical facts, that is, the events that occurred leading up to the

21  stop or the search." *Ornelas*, 517 U.S. at 695.  Second, judges are to decide "whether the historical

22  facts, viewed from the standpoint of a reasonable police officer," amount to probable cause.  *Id*. at

23  696-97.

24          a.      *Seizure of the Boat Based on Lack of a Visible HIN*

25          Defendants first argue that the officers had probable cause to tow the boat after they searched

26  for – but were unable to find – its HIN. Def. Mot. at 7.  McLain responds that even if the HIN was

27  not visible when the boat was moored in the water, once it was removed, the officers could have

28

1    located it if they had looked in the correct location.  Pl. Opp. at 2.  For the reasons below, the Court

2    finds that the facts establish that probable cause existed to support the officers' initial seizure of the

3    boat.

4         In their Motion, Defendants contend that pursuant to California Vehicle Code sections 9845

5    and 9872.1, upon visually inspecting the boat and being unable to locate a HIN, the officers were

6    authorized to tow the vessel and thus there was no Fourth Amendment violation.  Vehicle Code

7    section 9845 provides:

8         The director, deputy director, registrar, deputy registrar, investigators of the
          department, and peace officers, as defined in Chapter 4.5 (commencing with Section
9         830) of the Penal Code, may inspect the hull identification number, certificate of
          number, and certificate of ownership of any vessel, as defined in Section 9840, when
10        transported on a highway, or in any public garage, repair shop, public or private
          marina, dry storage facility, new or used vessel sales lot or boat yard, or other similar
11        establishment for the purpose of investigating the ownership and registration of
          vessels, locating stolen vessels, and for inspection of wrecked, dismantled, or
12        abandoned vessels.  The authority to inspect pursuant to this section does not extend to
          any enclosed living area aboard a vessel.
13

14   Cal. Veh. Code § 9845.  Concurrently, Vehicle Code section 9872.1 states:

15        (a) No person shall knowingly buy, sell, offer for sale, receive, or have in his or her
          possession any vessel, or component part thereof, from which the hull identification
16        number has been removed, defaced, altered, or destroyed, unless the vessel or
          component part has attached thereto a hull identification number assigned or approved
17        by the department in lieu of the manufacturer's number.

18        (b) Whenever a vessel, or component part thereof, from which the hull identification
          number has been removed, defaced, altered, or destroyed, and which does not have
19        attached thereto an assigned or approved number as described in subdivision (a),
          comes into the custody of a peace officer, the seized vessel or component part is
20        subject, in accordance with the procedures specified in this section, to impoundment
          and to such disposition as may be provided by order of a court having jurisdiction.
21        This subdivision does not apply with respect to a seized vessel or component part used
          as evidence in any criminal action or proceeding.
22

23        Defendants contend that the officers exercised their authority under section 9845 to inspect

24   the boat for a HIN, and when they were unable to locate the HIN, they acted pursuant to section

25   9872.1 to impound it.  Def. Mot. at 7.  They assert that it was only after the boat was dismantled that

26   the SFPD was able to locate the HIN.  *Id.*

27        McLain, however, maintains that the facts show that it was unreasonable for the officers to

28

15

UNITED STATES DISTRICT COURT
For the Northern District of California

seize the boat.  First, McLain argues that Sgt. McMahon decided to seize the boat *before* the officers attempted to identify the HIN.  Pl. Opp. at 2.  Defendant counter that the critical time for assessing whether probable cause existed is the moment the boat was towed.  Def. Reply at 2, Dkt. No. 39. They assert that, "[i]t is undisputed that the Officers towed the boat on January 12, 2011, at 10:15 a.m., after the Officers searched for an HIN but could not locate one."  *Id*.  The Court agrees with Defendants that the Court's focus is whether the Officers had sufficient facts to support the decision to seize the boat *at the time it was actually seized.*

Second, McLain asserts that the HIN was affixed to the hull on the starboard side of tansom at the water line (where the manufacturer was required to place it), and while the officers who searched the boat would not have been able to see the HIN while the boat was moored in the water bow forward at the dock, once the boat was towed, they would have been able to identify the HIN if they knew where to look.  Pl. Opp. at 2.  He argues that Sgt. McMahon did not contact the hull manufacturer to learn where the HIN was located until four months after the boat was towed and a month after it was dismantled, at which time the hull manufacturer confirmed it was in the right place.  *Id*. at 2-3.  McLain also submits that there is no evidence that the HIN had been removed, defaced, altered, or destroyed prior to the seizure.  *Id*. at 3.  He points out that he did not have the hull painted after purchasing the boat and the DMV inspector was able to identify the HIN when it registered the boat to him.  *Id.*

McLain's argument is unavailing.  As Defendants note, it is undisputed that multiple officers searched for, but could not find a visible HIN, and that it was only after SFPD dismantled the boat that they were able to locate the HIN.  Moreover, even if the HIN was affixed to the hull on the starboard side of tansom at the water line, McLain acknowledges that the boat had to be removed from the water in order to find the HIN.

Third, McLain asserts SFPD knew the hull did not belong to the Department because days before the officers seized the boat, they learned that the hull had been turned in by the Marine Unit to Fleet, who in turn sent the hull to be sold at auction.  Pl. Opp. at 3.  McLain's argument, however, is misplaced.  As Defendants correctly note, knowledge of claim to title is irrelevant to whether Vehicle

16

1    Code section 9872.1 authorized the officers to seize the vessel for failing to display a HIN.  *Id.*

2          Based on the undisputed facts, the Court finds that Defendants have established that they were

3    authorized to tow Plaintiff's boat.  Pursuant to Vehicle Code section 9845, the SFPD officers were

4    authorized to inspect the boat in the public marina for an HIN.  It is undisputed that on July 11, 2010,

5    before the boat was towed the following morning, several officers searched, but were unable to locate

6    a visible HIN.  UMF ¶ 57.  Thus, the officers had probable cause to tow and impound the boat

7    pursuant to Vehicle Code section 9872.1.  Accordingly, because the officers were authorized under

8    California law, the Court finds that they did not violate McLain's Fourth Amendment rights when

9    towing the boat for lack of a visible HIN.  The Court therefore **GRANTS** summary judgment in favor

10   of Defendants on this claim.

11               *b.     Seizure of the Boat Based on Belief that it Contained Stolen Property*

12         Defendants next contend that no Fourth Amendment violation occurred because the officers

13   had probable cause to believe the equipment on the boat was stolen.  Def. Mot. at 8.  An officer may

14   lawfully seize property that is in plain view without a warrant when the officer has probable cause to

15   believe it is stolen.  *Texas v. Brown*, 460 U.S. 730, 739 (1983).  Plain view seizures are valid if the

16   police have probable cause to believe an item is evidence after an inspection of "what is already

17   exposed to view."  *Arizona v. Hicks*, 480 U.S. 321, 322 (1987).  For the plain view doctrine to justify

18   a seizure: (1) the initial intrusion must be lawful; and (2) the incriminating nature of the evidence

19   must be immediately apparent to the officer.  *United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir.

20   2000).  The incriminating nature of the object is immediately apparent if police have probable cause

21   to believe an object in plain view is contraband.  *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

22         Here, there is no dispute that the officers lawfully gained access to the Hyde Street Pier where

23   the boat was moored in a public slip.  Thus, the first requirement is met.  As to the second inquiry,

24   Defendants argue that before seizing the boat and equipment, the officers conducted an extensive

25   investigation into possible financial misconduct regarding Marine Unit property and had information

26   that the equipment that Officers reported they had seen on the boat had never been formally

27   transferred out of the possession of the SFPD.  Mot. at 8.  Particularly, Defendants proffer the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

17

following facts: McLain worked for the dock and had access to the SFPD's storage locker (UMF ¶¶ 14, 20, 25); officers saw McLain driving around in a boat with what appeared to be SFPD engines, SFPD radar, a SFPD console, and a SFPD roll bar (UMF ¶¶ 11, 13, 23, 52, 53); a Marine Unit officer told investigators that equipment was missing from the Marine Unit's storage unit (UMF ¶ 15); McLain told investigators that he bought the boat off Craigslist for $5,000 (UMF ¶¶ 26, 28); the DMV records showed that McLain bought the boat for $500 (UMF ¶ 29); the City's records showed that only the hull (no equipment) was auctioned in 2005 for $1 (UMF ¶ 45); McLain told investigators that he could not find the paperwork regarding the boat's registration (UMF ¶ 30); Craigslist could not find any old listings for the boat (UMF ¶ 34); the person who purportedly sold the boat to McLain refused to speak to investigators (UMF ¶ 33); officers could not find any records showing that the SFPD ever sold or auctioned boating equipment, such as engines, radar, or consoles (UMF ¶ 48); when officers inspected the boat, they could see SFPD markings on the sponsons through the paint (UMF ¶ 52); when officers inspected the boat, the serial numbers on the engines matched SFPD serial numbers (UMF ¶ 52); multiple officers believed the radar looked similar to SFPD radar (UMF ¶¶ 23,53); and the officers could not find a HIN number on the boat. (UMF ¶ 57). Def. Reply at 3-4.  Defendants argue that these facts are "more than sufficient to establish a fair probability that the boat's equipment was stolen." *Id.* at 4.

McLain counters that, at most, Defendants knew: (1) the hull had been turned in to Central Shops and sold at auction in 2005; (2) the Marine Unit did not keep good records of its inventory; (3) the Marine Unit was still undertaking an inventory of its equipment at the time SFPD seized the boat; and (4) SFPD had not yet obtained a search warrant for Marine Unit records.  Pl. Reply at 4-5.  Based on these facts, Plaintiff argues that "[t]he mere failure of the investigators to find proper government records regarding the purchase or disposal of Marine Unit equipment does not establish probable cause, and the search warrant for Marine Unit records was not executed until after SFPD seized Plaintiff's boat."  Pl. Mot. at 15.

The Court has carefully considered the parties' arguments and agrees with Defendants that the officers adduced sufficient information to establish probable cause that the equipment on the boat was

1   stolen.  As Defendants note, the equipment – particularly, the sponsons, two engines, and console –

2   resembled those which belonged to the SFPD fleet; the sponsons bore SFPD markings on the

3   sponsons; Sgt. McMahon had been unable to find records tracking the custody of the equipment from

4   the SFPD to McLain; Sgt. McMahon was unable to verify McLain's explanation of how he purchased

5   the boat; and McLain worked for the dock and had access to SFPD's storage locker.  Taken together,

6   the Court finds that these facts gave the officers a reasonable basis to believe the equipment was

7   stolen.  Accordingly, the Court finds Defendants' seizure on this basis was lawful and did not violate

8   McLain's Fourth Amendment rights.  The Court therefore **GRANTS** summary judgment in favor of

9   Defendants on this claim.

10                 *c.    Dismantling the Boat*

11          McLain also claims that Defendants' act of retaining the boat for nine months and dismantling

12   it violated the Fourth Amendment.  Pl. Mot. at 17.  He asserts that, "[o]nce Plaintiff's boat was seized

13   and safely immobilized, it was unreasonable to undertake the additional and greater intrusion of

14   searching it – let alone taking it apart – without a warrant."  Pl. Opp. at 4.  In support, McLain cites

15   *Robey v. Superior Court*, 56 Cal. 4th 1218 (2013).  However, as Defendants point out, in *Robey*, the

16   seized object was a package – not an automobile or boat – and the California Supreme Court noted

17   that the analysis applied to searches of automobiles did not apply to a package.  *Id*. at 1239-40.

18   *Robey* therefore does not support McLain's argument that a warrant was required to dismantle the

19   boat.

20          In their Motion, Defendants argue that McLain's claim fails because a claim for retaining

21   property is a Fourteenth Amendment claim, and, in any event, the scope of the seizure required that

22   the officers dismantle the boat to search for stolen property and a HIN.  Def. Mot. at 8-9, Def. Reply

23   at 4-5.  Thus, Defendants argue that it was substantively reasonable for the Officers to dismantle the

24   boat.  Def. Reply at 4.

25          The Court agrees with Defendants that because Defendants were searching for stolen property

26   and for the HIN, dismantling the boat was a continuation of the initial search and did not amount to a

27   Fourth Amendment violation.  *See United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011);

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    *United States v. McCartney*, 550 F. Supp. 2d 1215, 1225 (E.D. Cal. 2008) ("When a vehicle enters

2    police custody, law enforcement officers are permitted to inventory search the vehicle and inventory

3    and impound its contents.").  The Court therefore **GRANTS** summary judgment in favor of

4    Defendants on this claim.

5    **B.      Fifth Amendment Takings Claim**

6            In Claim Three, McLain asserts a § 1983 claim for violation of the Fifth Amendment's

7    takings clause.  Compl. ¶¶ 77-86.  He alleges that Defendants' seizure of the boat and equipment,

8    dismantling it, and holding it for nine months, constituted an unlawful taking without just

9    compensation in violation of the Fifth Amendment.  *Id.*  Defendants move for summary judgment on

10   the claim, arguing that the towing of the boat as part of its investigation was not a taking for public

11   use under the Fifth Amendment.  Def. Mot at  9.  The Court agrees.

12           The Fifth Amendment of the United States Constitution provides in relevant part, "Nor shall

13   private property be taken for *public use*, without just compensation."  U.S. Const. Amend V

14   (emphasis added).  The Fifth Amendment applies to the states through the Fourteenth Amendment.

15   *See, e.g.*, *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 175, n. 1

16   (1985).  Here, Defendants argue that there was no taking under the Fifth Amendment because SFPD

17   was exercising its police powers when it towed the boat.  Def. Mot. at 9.  In support, Defendants cite

18   *Deligiannis v. City of Anahein*, 2010 WL 1444538, at *8 (C.D. Cal. Mar. 2, 2010), which held that

19   towing cars is an exercise of police powers and not a taking for public purposes within the meaning

20   of the Takings Clause.  Particularly, in *Deligiannis*, the court reasoned:

21           [W]hile the propriety of the exercise of the police's authority to seize plaintiff's
             vehicle remains in issue, the records reflects that such vehicle was seized by the police
22           pursuant to its police power under California Vehicle Code section 22651(i)(1).  Thus,
             plaintiff's vehicle was not seized for a "public use" in the context of the Takings
23           Clause.

24   *Id*.  Several other courts have recognized that seizure of property pursuant to a governmental entity's

25   police power does not constitute a taking under the Fifth Amendment.  *See, e.g., Missud v.*

26   *California*, 2013 WL 450391, at *4 (N.D. Cal. Feb. 5, 2013) ("Towing cars that have accumulated an

27   excessive number of parking tickets is an exercise of police power, not a taking for public purposes

28

UNITED STATES DISTRICT COURT
For the Northern District of California

within the meaning of the Takings Clause."); *McCain v. Stockton Police Dept.*, 2011 WL 4701696, at

*5 (E.D. Cal. Oct. 4, 2011) ("[A]ny claim that plaintiff's Vehicle was taken 'without just

compensation' fails as a matter of law, because 'property seized and retained pursuant to the police

power is not taken for a 'public use' in the context of the Takings Clause' of the Fifth Amendment.")

(citing *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008)).

Here, by analogy, Defendants contend that the towing of McLain's boat was also not a taking

for public use, but an exercise of police power.  Because SFPD towed the boat – at least in part –

pursuant to California Vehicle Code section 9872.1 because they did not see a HIN, the Court agrees

with Defendants that the seizure of the boat was undertaken pursuant to its police power.  The fact

that McLain challenged the seizure for lack of probable cause does not change this result.  As the

court explained in *Mateos-Sandoval v. Cnty. of Sonoma*, 2013 WL 415600, at *16 (N.D. Cal. Jan. 31,

2013):

> In the present case, if Plaintiffs can prove their Fourth Amendment claim, then
> Defendants' interference with their property rights – the impoundment of their trucks –
> was unlawful.  But that does not mean that the taking was "for public use."  The
> takings clause only "requires compensation in the event of otherwise proper
> interference amounting to a taking."  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528
> (2005).  The "public use" requirement "goes to the legitimacy of the government's
> taking to begin with; if a taking is not for public use, the government has no right to
> complete the act of eminent domain."  *Lee v. City of Chicago*, 330 F.3d 456, 475 (7th
> Cir. 2003) (Wood, J., concurring).  The unlawful seizure of property does not
> constitute a "public use."
>
> If, on the other hand, Plaintiffs ultimately fail to prove their Fourth
> Amendment claim, their takings clause claim would also fail because Defendants
> lawfully acquired their trucks "under the exercise of governmental authority other than
> the power of eminent domain."  *Bennis v Michigan*, 516 U.S. 442, 452 (1996).

The same logic applies in this case.  To the extent that McLain contends the seizure of the boat was

unlawful, he has asserted a claim for violation of his rights under the Fourth Amendment.  However,

SFPD's towing of the boat does not constitute a taking for public use under the Fifth Amendment.

The Court therefore **GRANTS** summary judgment in favor of Defendants on McLain's Fifth

Amendment takings claim.

**C.     Qualified Immunity**

In their Motion, Defendants argue that even if the Court were to find that constitutional

21

1  violations occurred, Defendant Officers are entitled to qualified immunity.  Def. Mot. at 9.  The

2  doctrine of qualified immunity protects government officials "from liability for civil damages insofar

3  as their conduct does not violate clearly established statutory or constitutional rights of which a

4  reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In order to

5  determine whether an officer is entitled to qualified immunity, the Court must determine: "(1)

6  whether the facts alleged show that the officer violated a constitutional right; and (2) if so, whether

7  that right was clearly established at the time of the event."  *Rosenbaum v. Washoe Cnty*, 663 F.3d

8  1071, 1075 (9th Cir. 2011).  These two questions may be considered in either order.  *Pearson v.*

9  *Callahan*, 555 U.S. 223, 236 (2009).

10         Defendants contend that the California Vehicle Code gave the officers statutory authority to

11  inspect the boat for an HIN and to impound it for lack of a visible HIN.  Def. Mot. at 10.  Defendants

12  further argue that the officers had sufficient facts to lead them to believe that the equipment was

13  stolen property and thus the right to seize that property.  As to Defendants Bettencourt, Mopas, and

14  Matthews, Defendants argue that McLain has no evidence that these officers took any action that

15  violated his rights; rather, they simply towed the boat upon orders to do so.  *Id.* at 10-11.  McLain

16  counters that the law regarding probable cause was clearly established and thus the officers could not

17  have reasonably believed that their actions were constitutional.  The Court, however, agrees with

18  Defendants.  As discussed above, when inspecting the boat for the HIN and being unable to locate

19  one, and when towing the vessel, the officers were acting pursuant to California Vehicle Code

20  sections 9845 and 9872.1.  The officers thus could have reasonably believed that their actions were

21  legal.  The Court therefore finds that the officers are entitled to qualified immunity.

22  **D.    *Monell***

23         Defendants next move for summary judgment on McLain's *Monell* claim.  Def. Mot. at 11-12.

24  A municipality may be subject to liability under § 1983 when the enforcement of a municipal policy

25  or custom was the moving force behind the violation of a constitutionally protected right.  *Monell v.*

26  *Dep't of Social Servs*., 436 U.S. 658, 663-64 (1978).  To state a claim under *Monell*, a plaintiff must

27  plead "a constitutional right violation resulting from (1) an employee acting pursuant to an expressly

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3)

2  an employee acting as a final policymaker." *Delia v. City of Rialto*, 621 F.3d 1069, 1081–82 (9th Cir.

3  2010) (citation and internal quotation marks omitted).  As discussed above, the Court finds that

4  Defendants are entitled to summary judgment on McLain's Fouth and Fifth Amendment claims.

5  Accordingly, there is no constitutional violation and no basis to support McLain's *Monell* claim.  *See*

6  *Aguilera v. Baca*, 510 F.3d 1161, 1174 (9th Cir. 2007).  The Court therefore **GRANTS** summary

7  judgment in favor of Defendants on this claim.

8  **E.      State Law Claims**

9          In the Complaint, McLain asserts state law claims for: (1) violation of the California

10  Constitution Art. I, sections 13 and 19 (claims four, five, and six); (2) trespass to personal property

11  (claim seven); (3) conversion (claim eight); and (4) negligence (claim nine).  Defendants move for

12  summary judgment on each of McLain's state law claims.  Def. Mot. at 12-13.

13          1.      Claims for Violation of California Constitution Art I., Sections 13 and 19

14          Defendants first move to dismiss McLain's claims for violation of sections 13 and 19 of

15  Article I of the California Constitution on the ground that no private right of action exists for these

16  claims.  Def. Mot. at 12.  Article I, section 13 of the California Constitution provides:

17          The right of the people to be secure in their persons, houses, papers and effects against
          unreasonable searches and seizures may not be violated; and a warrant may not issue
18          except on probable cause, supported by oath or affirmation, particularly describing the
          place to be searched and the persons and things to be seized.
19

20  Article I, section 19 is California's equivalent of the Fifth Amendment's takings clause and provides:

21  "Private property may be taken or damaged for public use only when just compensation, ascertained

22  by a jury unless waived, has first been paid to, or into a court for, the owner."  California courts

23  generally construe the federal and California takings clauses congruently.  *San Remo Hotel v. City &*

24  *Cnty. of San Francisco*, 27 Cal.4th 643, 664 (2002)).

25          In support of their argument that McLain' claims are subject to dismissal, Defendants cite

26  *Jackson v. Silicon Valley Animal Care Auth.*, 2008 WL 5130746, at *5 (N.D. Cal. Dec. 5, 2008),

27  wherein the district court held that the plaintiff's claims for violation of Article I, section 13 "fail[ed]

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    as a matter of law because no California court has held that [Article I, section 13] provides a private

2    right of action for damages." Def. Mot. at 12. Based on the reasoning set forth in *Jackson*, McLain

3    is therefore foreclosed from asserting a claim under Article I, section 13. With respect to McLain's

4    claim under Article I, section 19, Defendants fail to cite any authority holding that no private right of

5    action exists under this provision and Plaintiffs fail to address Defendants' argument in their

6    Opposition. However, at the hearing, Plaintiffs conceded that the claims should be dismissed.

7    Accordingly, the Court **GRANTS** judgment in favor of Defendants on claims four, five, and six.

8               2.    Statutory Immunity Under California Government Code section 821.6 and 815.2

9               As to McLain's claims for trespass to personal property, conversion, and negligence,

10   Defendants argue that California's Government Code sections 821.6 and 815.2 immunizes the

11   individual defendants and City from such tort claims. Def. Mot. at 12-13.

12              California Government Code section 821.6 provides that a public employee is not liable for

13   "injury caused by his instituting or prosecuting any judicial or administrative proceeding within the

14   scope of his employment, even if he acts maliciously and without probable cause." "Section 821.6 is

15   not limited to conduct during formal proceedings, but also provides immunity for conduct during an

16   investigation because investigation is an 'essential step' towards the formal proceeding." *Linder v.*

17   *City of Emeryville*, 2013 WL 4033910, at *5 (N.D. Cal. Aug. 6, 2013) (citing *Amylou R. v. Cnty. of*

18   *Riverside*, 28 Cal. App. 4th 1205, 1209-10 (1994)). Moreover, section 815.2(b) provides that a

19   public entity is not liable for the acts or omissions of an employee if that employee is immune from

20   liability. Cal. Gov't Code § 815.2.

21              Defendants argue that they are immune for their acts because the officers towed and

22   dismantled the boat in furtherance of their investigation as it related to both the OIC of the Marine

23   Unit and to McLain. Def. Mot. at 13. McLain argues that the statutory immunities do not apply

24   because the officers are sued in their official capacities. Pl. Opp. at 9-10. However, as Defendants

25   point out, McLain fails to cite any authority for this proposition and has not proffered any explanation

26   as to why this distinction is relevant. The Court therefore agrees with Defendants that the individual

27   Defendants are immune from McLain's California tort claims under Government Code section 821.6

28

UNITED STATES DISTRICT COURT
For the Northern District of California

24

and the City is immune pursuant to Government Code section 815.2.  The Court therefore **GRANTS** Defendants' Motion with respect to claims seven, eight, and nine.

### V.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment as to all claims.

The Clerk of Court shall enter Judgment for Defendants.

**IT IS SO ORDERED.**

Dated: February 3, 2014

_____
Maria-Elena James
United States Magistrate Judge